Nick Tedesco, alleging himself to be a resident of the Third Municipal District of the City of New Orleans and a qualified voter, duly registered from Precinct No. 22 of Ward Nine, and proceeding under the State Uniform Declaratory Judgment Act, Act No. 22 of 1948, Ex.Sess., brought this proceeding for the purpose of having declared unconstitutional Act No. 234 of 1948. In his original petition he did not pray for citation upon nor for judgment against any person, public official, or board. He merely prayed that a copy of the petition be served upon the Attorney General of the State, and that there be judgment declaring the said statute unconstitutional. Though there was no prayer for citation upon any person, public official, or board, there was written upon the last page of his petition an order which was duly signed by one of the judges of the Civil District Court. This order reads as follows:
"Let the defendant, the Board of Supervisors of Elections in and for the Parish of Orleans, and each of the individual members thereof, namely: William A. Conkerton, William Farrell and Louis K. Knop, Jr., be cited to answer this petition.
"Let Honorable Bolivar E. Kemp, Attorney General of Louisiana, be served with a copy of this petition."
Plaintiff alleged that the said statute is violative of section 16 of Article III of the *Page 515 
Constitution of Louisiana of 1921 in that the title of the said act is not indicative of its object. He alleged also that the said act is violative of the provisions of section 17 of Article III of the Constitution of 1921 for two reasons:
"(1) Section 2 of said statute purports to amend and reenact only sub-paragraph (i) of Section 4 of Act 159 of 1912 (as amended by Act 338 of 1936) without reenacting and publishing at length said Section 4.
"(2) That Section 3 of said statute purports to amend and reenact only sub-paragraph (k) of Section 4 of Act 159 of 1912 (as amended by Act 338 of 1936) without reenacting and publishing at length said Section 4."
He alleged that the said act is violative of the Constitution of the United States and of certain amendments thereof in that it deprives him of his privileges and immunities as a citizen of the United States and of the State of Louisiana, in that it deprives him of the privilege of voting for "six of the Commissioners who are each vested with the respective duties of administering the affairs of one of the eight Departments in which the executive and administrative powers of the City of New Orleans are vested * * *." He alleged that for this reason the act violates the provisions of the Fourteenth Amendment of the Constitution of the United States. He charged further that the act deprives him "of his liberty and property without due process of law in that residents of other districts, namely the first, second, fourth, fifth and seventh districts of the City of New Orleans are given greater representation in the Commission Council of the City of New Orleans in that approximately one-half of the people in the City of New Orleans reside in the Third and Sixth Districts of said City are to be represented by only two-sevenths of the Commissioners to be elected under said act."
He averred also that sections 2, 3, 4 and 5 of the said act are inconsistent with the provisions of Act No. 351 of 1948, which act was passed later at the same session and that therefore these sections are repealed by the later act.
In the alternative that sections 2, 3, 4 and 5 of the act are held to be constitutional, then he alleges that section 1 would be unconstitutional for the reason that it provides for the election of a Mayor and seven Commissioners, whereas the later Statute, Act No. 351 of 1948, provides for the division of the government of the City of New Orleans into five departments, with the result that three members of the Commission Council will be without administrative duties or powers.
He alleged also that despite the manifest unconstitutionality and illegality of the said statute, the Board of Supervisors of Elections of the Parish of Orleans will undertake to conduct the General Election and that that Board should be judicially restrained from doing so.
In compliance with the order that the Board of Supervisors of Elections and each individual member thereof be cited, citations were issued directed to "The Board of Supervisors of Elections for the Parish of Orleans, thru its proper officer," "The Hon. Louis Knop, Jr.," "Hon. William A. Conkerton," "Hon. William Farrell," and a copy of the petition and order was served upon each of them and also upon Carroll Buck, Assistant Attorney General.
The three individuals named, to-wit: William S. Farrell, Louis Knop, Jr., and William F. Conkerton (incorrectly designated in the citation as William A. Conkerton), and the Board of Supervisors of Elections for the Parish of Orleans filed numerous pleas and exceptions, the said Board of Supervisors appearing "in so far as it is capable of so doing." All of the said defendants contended that the said Board is without capacity to stand in judgment; that there is no party defendant whatsoever before the Court; that the Court "cannot exercise jurisdiction" and that the "instrument filed by plaintiff is not such written demand as is required by law for the commencement of an action," and all contended that the instrument filed by plaintiff prays for no relief against them.
The petitioner then filed a supplemental and amended petition, in which he recited all of his originally made allegations and in *Page 516 
which he prayed for citation upon the said Board and upon the individual members thereof, and in which he prayed for judgment in his favor and against the said Board and the individual members, declaring Act No. 234 of 1948 to be unconstitutional and void.
To this supplemental petition the three individual members of the Board and the Board itself filed exceptions identical with those originally filed, and the further plea that there could be no amendment to the original petition since the original petition was not sufficient to initiate a proceeding of any kind.
James O'Niell, alleging himself to be a person above the age of majority and a resident of New Orleans, intervened and prayed for permission to join plaintiff and that there be judgment in plaintiff's favor.
After a trial, there was judgment dismissing the suit and plaintiff has appealed.
The three individual members of the Board and the Board itself, "so far as it is capable of doing so," answered the appeal praying that the judgment insofar as it dismisses the suit be affirmed, but that it be amended so as to maintain the various exceptions which were filed below.
Counsel for the exceptors state in their brief that it was not necessary that the exceptors answer the appeal, and that even had there been no answer we could, nevertheless, amend the judgment appealed from by converting it into a judgment maintaining all or some of the pleas or exceptions and dismissing the suit on the exceptions instead of on the merits. The latest expression of the Supreme Court on the subject supports the view that the answer to the appeal was not necessary. See Succession of Markham, 180 La. 211, 214,156 So. 225, 227, in which the Supreme Court said: "* * * The rulings on all such exceptions may be considered on appeal without reference as to whether the party, desiring a review of the ruling on the exception, has himself appealed or has filed an answer to the appeal of the opposite party. Entertaining this view, the decisions cited are overruled on the question under consideration, and we shall now proceed to review the ruling on the exception."
That conclusion is interesting in view of the fact that in at least nine other cases the contrary conclusion was reached, namely, City of New Orleans v. New Orleans Jockey Club,115 La. 911, 40 So. 331; Oglesby v. Turner, 127 La. 1093, 54 So. 400; Chopin v. Freeman, 145 La. 972, 83 So. 210; Alfred Hiller Co., Ltd. v. Hotel Grunewald Co., Ltd. 147 La. 129, 84 So. 520; Siragusa v. Illinois Cent. R. Co., 152 La. 745, 94 So. 376; Dorsett v. Thomas, 152 La. 60, 92 So. 734; Bogue-Chitto Gravel Co., Inc. v. Police Jury of Lafourche Parish, 11 La. App. 246, 122 So. 505, 507; Keith v. Lee, 13 La. App. 309, 127 So. 139.
We are much impressed with the serious nature of the various pleas and exceptions, and were it not for the precedent which has already been set by the Supreme Court, we would have deemed it advisable to give study to those exceptions, and had we given serious study to them, we doubt that we would have found it possible to clear that hurdle and proceed to a consideration of the merits of the controversy. However, in a similar situation in which the same statute was under attack and in which the preliminary pleas and exceptions which are found here were also found the Supreme Court said: "Although the appellants are also re-urging most vigorously all of their exceptions to the rule issued against them to show cause why the injunction should not have been issued in this case, we have concluded to pretermit these exceptions and pass to the merits since this case involves issues that must be disposed of as expeditiously as possible in order that the primaries nominating those who will seek election as the city's officials may be timely and orderly held prior to the general election in April of 1950." City of New Orleans v. Board of Supervisors of Elections for Parish of Orleans, La.Sup. 1949, 43 So.2d 237.
Guided by that precedent, we pass at once to the constitutional questions which are raised by the petitions.
It is our opinion that the issues raised by the contention that the statute violates the *Page 517 
provisions of the State Constitution were all considered and passed upon by the Supreme Court in City of New Orleans v. Board of Supervisors of Elections for Parish of Orleans, supra. As a matter of fact, in oral argument, counsel devoted no time to the discussion of the contention that the statute is violative of the State Constitution and devoted little space in their brief to this question.
The attacks which counsel for plaintiff contend are warranted by the Federal Constitution as amended are based on the idea that the right of suffrage is a privilege or an immunity which is granted or guaranteed by that Constitution, and that any attempt by a state to regulate or control that right is violative of the Federal Constitution or of some of the amendments thereof.
Almost from a time when "the memory of man runneth not to the contrary" it has been held that the right to vote is granted by each state to its citizens and that that right may be regulated by each state so long as the regulations do not produce unwarranted or unfair discrimination against any particular class or group of potential voters whose rights are protected by the Constitution as amended. As a matter of fact, there is nothing in the Federal Constitution, nor in the amendments, which even prohibits unfair discrimination, unless it be where a Federal election is involved, or unless it be where there is a discrimination which is expressly prohibited by the Fifteenth Amendment, or by the Nineteenth Amendment.
In Minor v. Happersett, 21 Wall 162, 88 U.S. 162, 22 L.Ed. 627, the Supreme Court held that the right of suffrage is not granted to citizens by the Constitution of the United States, nor guaranteed by the Fourteenth Amendment and held, — of course at a time long prior to the Nineteenth Amendment which guaranteed women equal rights to vote, — that a provision in a State Constitution limiting the right to vote to male citizens is not violative of the Federal Constitution. The Court held that the right of suffrage is not one of the rights granted by the Federal Constitution, and that the Fifteenth Amendment does not grant or enlarge that right but merely requires that no state shall itself abridge that right because of race, color or previous condition of servitude. All that the Nineteenth Amendment does is to add that the right to vote, when granted by a state, shall not be abridged because of sex.
The charge that by the statute in question the plaintiff is deprived of a privilege or an immunity is based on the contention that by that statute plaintiff is permitted to vote only for the Mayor and for one of the Commissioners and not for the other Commissioners. Plaintiff says that he is entitled to vote for each one and not only is he not permitted to vote for all, but that those voters who live in the most heavily populated municipal districts are discriminated against because they are permitted to vote for only one Commissioner for each district, whereas the voters in each of the much smaller districts also vote for one Commissioner for each district. To illustrate the point, counsel for plaintiff points out that in the Fifth District, although there are about 8,508 registered voters, those voters have the privilege of electing one Commissioner, whereas the voters of the Third District, who are at the present time numbered at about 48,020, are permitted to elect only one Commissioner. It is contended that as a result the voters of the Third District are improperly discriminated against.
In the first place, we do not see that by this contention there is raised any question cognizable under the Federal Constitution for the reason, as we have said, that it is well settled that the right to vote in each State is given by the State and may be curtailed by the state or controlled by the state so long as there is no violation of the Fifteenth Amendment or of the Nineteenth Amendment of the Federal Constitution.
Counsel for plaintiff declare that the Supreme Court of the United States has indicated in two instances that a state may not pass such statute as that which is now before us. They say that that was so indicated in Breedlove v. Suttles,302 U.S. 277, 58 S.Ct. 205, 82 L.Ed. 252, and Colegrove v. *Page 518 
Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432. Counsel for defendants, on the other hand, are of the opinion that those cases are authority for the view that that is no violation of any provision of the Federal Constitution, nor of the amendments thereof, unless there results a violation of the provisions of the Fifteenth Amendment, or of the Nineteenth Amendment.
We have read these cases and find them most confusing, but conclude that there is nothing in either of them to support the contention of plaintiff and that rather they support the view that unless a federal election is involved or unless there is involved a violation of the Fifteenth Amendment or of the Nineteenth Amendment, or unless such a statute brings about an unwarranted and unfair discrimination, there is nothing violative of the Federal Constitution. And we are not at all certain that even if there is an unwarranted discrimination there is a violation of the Federal Constitution, unless it be that the discrimination is based on sex, or race, or color, or previous condition of servitude.
When we come to consider the contention that there is a violation of the Fourteenth Amendment, we find that we cannot be convinced that that amendment is in any way violated by this statute. Again, we refer to the fact that the right to vote is not granted or guaranteed by the Federal Constitution. Therefore, we do not see how it can be said that where a State enacts laws controlling suffrage, the privileges and immunities of citizens of the United States are abridged unless, of course, we repeat, the statute in question in some way violates the Fifteenth Amendment or the Nineteenth Amendment. We do not see that it violates the Fourteenth Amendment. As a matter of fact, in a volume issued by the Superintendent of Documents of the Government Printing office at Washington, D.C., we notice that in the comments under the Fourteenth Amendment the case of Minor v. Happersett, supra, is cited as authority to the effect that the Fourteenth Amendment "did not add to the privileges and immunities of a citizen. It simply furnished an additional guaranty for the protection of such as he already had." See Constitution of the United States of America, Revised and Amended 1938, Amendment 14, p. 767, published by the Government Printing Office at Washington, D.C. To the same effect, see United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588 and United States v. Reese, 92 U.S. 214, 23 L.Ed. 563.
There is nothing in this statute which arbitrarily deprives any one of his right to vote, and we do not see that there is any fundamental right in every citizen to vote for every person who may aspire to public office. If the contention is sound that every person who is entitled to vote must be given the right to vote for or against everyone offering himself for any elective position, then on what basis can be justified the present method of electing Justices of the Supreme Court from different districts, or how can we justify the method by which Judges of the Courts of Appeal for the First and Second Circuits are elected from different districts? How can we justify the election of Railroad Commissioners from the different districts? There are probably many other instances in which boards or commissions are composed of members elected from different districts where the voters of one district vote only for one member but are subject to the rulings of the entire body.
It may be, though we do not so hold, that if a statute should arbitrarily and without sound reason divide a municipality or any political subdivision into districts as was done here, possibly there would be a violation of the fundamental rights of the various voters.
But assuming that if there were any such unwarranted discrimination there could be an action under the State or the Federal Constitution to prevent it, we do not see that there is necessarily such unwarranted discrimination here. Whatever may have been the real reason which lay back of the enactment of this statute, whether the reason was political, or whether it was punitive, we must assume that the Legislature acted properly and on sound reason. *Page 519 
Counsel for defendants call attention to the fact that at the present time no one of the Commissioners was chosen from the downtown or lower districts of the City, and they call attention to the further fact that there are divergent groups, social and otherwise, who live in the various districts and counsel suggest that possibly a realization of the fact that some of these downtown groups are not represented on the present Commission Council led the Legislature to decide that some method should be adopted under which each of the various districts, however located, would be represented. We do not know that this was the reason, but it is a possible reason, and who can say that it is not a sound reason. If it was, then there was no unfair discrimination.
We conclude that there is nothing in the statute violative of the State Constitution, nor of any of the provisions of the Federal Constitution nor of the amendments thereof.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.