54 So.2d 442

**KENDRICK et al. v. STATE ex rel. SHOEMAKER.**

**6 Div. 9.**

Supreme Court of Alabama.

Oct. 4, 1951.

John S. Foster and Maurice F. Bishop, Birmingham, for appellants.

210

Jerome Phillips and John T. Batten, Birmingham, for appellee.

LAWSON, Justice.

This is a mandamus proceeding filed in the circuit court of Jefferson County in the name of the State of Alabama on the relation of J. G. Shoemaker, as a voter, citizen and taxpayer of Jefferson County, against the County Commission of Jefferson County, W. D. Kendrick individually and as president of said commission, Earl Bruner, individually and as associate commissioner, and Charles E. Harrison individually and as associate commissioner.

The purpose of the proceeding was to secure an order commanding the County Commission, the governing body of Jefferson County, to furnish and provide voting machines for use in all primary, special and general elections held in Jefferson County.

Upon the filing of the petition it was ordered that an alternative writ of mandamus issue commanding the respondents to furnish and provide voting machines as prayed, or show cause why they should not be compelled to do so.

The alternative writ of mandamus is not process merely, but both process and pleading. Longshore, Judge, etc. v. State ex rel. Turner, 137 Ala. 636, 34 So. 684; Garrett, Sheriff v. Cobb, 199 Ala. 80, 74 So. 226.

Answer was filed to the alternative writ of mandamus wherein several defenses were set up. The answer was twice amended. Relator demurred to the answer as amended. The demurrer was overruled; thereupon relator filed his replication to the answer as amended.

The case was submitted to the court on an agreement or stipulation of the parties and on oral testimony.

After taking the case under advisement, the trial court rendered a judgment ordering that the peremptory writ issue "to the said Honorable W. D. Kendrick in his capacity as President of the County Commission of Jefferson County, and the Honorables Earl Bruner and Charles E. Harrison as members of the County Commission of Jefferson County ordering, directing and commanding them to furnish and provide voting machines for use in all pri-

mary, special and general elections in Jefferson County, according to the provisions of Article 7 of Title 17 of the Alabama Code of 1940." The peremptory writ issued as ordered.

From the judgment awarding the peremptory writ of mandamus the respondents have appealed to this court.

On July 21, 1939, the Governor proclaimed ratified an amendment to the Constitution of this state, the purpose ·of which was to grant authority to the legislature, by general or local law, to permit the use of voting machines at all elections, including primary elections, in any county, municipality, or other political subdivision of the state, under such regulations provided by general law with reference thereto as the legislature may from time to time prescribe. Const.1901, § 190; Amend. No. 41.

 The constitutional amendment is not self-acting, but requires enabling legislation. It is not mandatory, but grants authority to the legislature so as to relieve the former requirement of uniformity throughout the state in this respect. The constitutional amendment was evidently the result of the decision of this court in McCall v. Automatic Voting Machine Corp., 236 Ala. 10, 180 So. 695.

Enabling legislation was adopted. General Acts 1939, p. 443; see §§ 91–119, Title 17, Code 1940. For amendments and additions made to the Voting Machine Law, see 1949 Cum.Pocket Part, Vol. 4, Code 1940, Title 17, §§ 91–115(1).

In Abrasley v. Jefferson County, 241 Ala. 660, 4 So.2d 153, 156, we dealt with certain phases of the voting machine law. In that case it was shown that more than thirty ·days prior to November 5, 1940, a petition signed by the requisite number of voters was duly filed with the County Commission of Jefferson County, requesting the Commission to submit to the qualified electors of the county the question, "Shall Voting Machines be used in Jefferson County"? An election to determine that question was duly called and was held on November 5, 1940, pursuant to the petition. A majority of the voters participating therein voted "yes."

Abrasley instituted a declaratory judgment proceeding in the circuit court of Jefferson County against Jefferson County, the County Commission thereof and the individuals composing the Commission, the City of Birmingham, the Commission of the City of Birmingham, and the individuals composing said Commission, to determine and declare the rights and status of the parties with respect to the Voting Machine Law. From a judgment declaring the rights of the parties Abrasley appealed to this court. ·We modified the judgment appealed from and, as modified, the judgment was affirmed.

In part we held: (1) That since the election wherein it was determined that voting machines should be used was county-wide, there being no separate election on the question in the City of Birmingham, it was incumbent upon the County to furnish such machines for all elections whether general, primary, or special, including municipal elections; (2) that under such an election the City of Birmingham was neither required nor authorized to purchase or rent voting machines for use in municipal primary or municipal general elections to be held in the City of Birmingham; (3) that the authority and duty imposed on the County to furnish such machines could only be exercised within the limitation of indebtedness fixed by § 224 of the Constitution of 1901; (4) that if Jefferson County owed debts equal to its constitutional debt limit, it could not incur an additional debt by leasing the voting machines for one or more years, with or without an option to buy them, or enter into an obligation to do so whereby it is undertaken to bind the county to pay for their use a stipulated amount, without making it payable solely out of revenues of the county collected during the year in which they are used for which the payment shall be made; (5) that the County could, without violating § 224 of the Constitution, rent the machines for use in any election in the County or in any precinct or municipality in the County in which they are required by law to be used, and bind itself to pay for their use only out of current annual county revenue in preference to other claims not preferred by

law over such an obligation, but it could not be in the form of an unconditional obligation so as to be extended to subsequent years for payment, in event of an insufficiency of current revenues.

The decision in the Abrasley case, supra, was rendered by this court on July 29, 1941, and application for rehearing denied October 23, 1941.

This proceeding to require the County to install voting machines under the mandate of the people expressed in the election held on November 5, 1940, was filed on October 3, 1949.

It is insisted here that the petition for mandamus was insufficient and that, therefore, the trial court erred in rendering the judgment ordering the issuance of the peremptory writ.

In State ex rel. Gaston v. Cunninghame, 216 Ala. 423, 426, 113 So. 309, 312, cited by counsel for appellants, we said: "With us mandamus is a civil proceeding or remedy, commenced by petition, and the petition constitutes the first pleading in the case, and where, as here, it seeks to compel official action, it is incumbent on the petitioner to show, by averments, as well as proof, a specific legal right in the petitioner to have the act performed, and that the respondents are under duty and have the authority to do the act (Lewis et al. v. Jenkins, 215 Ala. 680, 112 So. 205; Home Guano Co. v. State ex rel. Pike, 193 Ala. 548, 69 So. 419; 13 Ency. P. & P. 672); and, if the averments do not show such right the petition will be dismissed, although its averments are not controverted or denied (State ex rel. Almon v. Burke, Judge, etc., 160 Ala. 163, 48 So. 1035; 26 Cyc. 471[b]; State ex rel. King et al. v. Pearce, Judge etc., 14 Ala.App. 628, 71 So. 656)."

It is argued that the petition fails to aver or show any right in petitioner to require appellants, respondents below, to provide voting machines, in that there are no averments to the effect that petitioner votes in a precinct where there are at least 100 registered voters, or in which the majority of the registered voters have petitioned for the installation of a voting machine. This insistence seems to be based on the provisions of § 94, Title 17, Code 1940, to the effect that the governing body may in its discretion elect not to install voting machines in any ward or precinct or beat having less than 100 registered voters unless petitioned to install such a machine by a majority of the registered voters in any such ward or precinct or beat. As before indicated, the petition alleges that petitioner is a voter, citizen and taxpayer of Jefferson County. It is now the settled rule in Alabama that a mandamus proceeding to compel a public officer to perform a legal duty in which the public has an interest, as distinguished from an official duty affecting a private interest merely, is properly brought in the name of the State on the relation of one or more persons interested in the performance of such duty to the public; but if the matter concerns the sovereign rights of the State, it must be instituted on the relation of the Attorney General, the law officer of the State. Marshall County Board of Education v. State ex rel. Williams, 252 Ala. 547, 42 So.2d 24; Gray v. State ex rel. Garrison, 231 Ala. 229, 164 So. 293, and cases cited. It is clear that the act which petitioner seeks to have performed does not concern the sovereign rights of the State and is one in which the public, all the people of Jefferson County, have an interest. Petitioner's right to have the act performed is not dependent upon the fact that he may or may not vote in a voting place where the governing body is required to install a voting machine

It is next insisted that the petition is insufficient in that it does not allege facts showing that appellants, respondents below, have been guilty of a breach of duty. The petition alleges, in part, as follows:

"4. Petitioner avers that it is the duty of the County Commission of Jefferson County, as the governing body of said County, to furnish and provide voting machines for use in all primary and general elections held in Jefferson County, as provided for by the mandate of the people as heretofore set out in paragraph three (3) of this petition; and also by virtue of Sec. 92 of Article 7, Title 17 of the 1940 Code of Alabama.

"5. That Jefferson County does not own or possess any voting machines as required by law and has failed or refused, after demand was made upon the governing body to acquire same, in violation of Sec. 94 of Article 7, Title 17 of the 1940 Code of Alabama."

■ We do not understand from briefs that counsel for appellants attack the sufficiency of paragraph 4 of the petition, which is quoted above, and which in our opinion clearly avers the duty of respondents to furnish and provide voting machines. The criticism is directed at paragraph 5, which it is insisted does not sufficiently charge a breach of such duty. Section 94, Title 17, Code 1940, requires that the governing body of a political subdivision "provide" voting machines. It is not expressly averred in paragraph 5 of the petition that respondents below had not provided such machines, but "that Jefferson County does not own or possess any voting machines as required by law." Voting machines may be provided by purchase or by rental and it is argued, in effect, that for aught appearing from the averments of the petition the governing body of Jefferson County has rented such machines. The words "own" and "possess" have been said to be synonymous, equivalents in common speech. Melvin v. Scowley, 213 Ala. 414, 104 So. 817. But the words are not always used as having the same meaning. See statutory provisions dealt with in Agnesia v. State, 35 Ala.App. 264, 45 So.2d 712; Hurvich v. State, 230 Ala. 578, 162 So. 362. The averment that Jefferson County did not possess voting machines as required by law sufficiently charges that such machines had not been provided in any of the ways authorized by statute, namely, by purchase, lease or rental. Paragraphs 4 and 5 of the petition should be considered together and, when so considered, show a duty on the part of the respondents below to furnish and provide voting machines and a breach of that duty. We cannot follow the highly technical argument advanced in connection with this point by counsel for appellants.

■■ It is next insisted that the petition contains no averment that there is any voting place in Jefferson County where there are as many as 100 registered voters, or that the majority of registered voters in any voting place in Jefferson County have petitioned for the installation of a voting machine; hence, no breach of duty is shown, for unless one of such conditions exists the governing body of Jefferson County is under no mandatory duty to provide voting machines. Such is the insistence of counsel for appellants. We cannot agree with that insistence. It was not incumbent upon petitioner to aver the number of persons voting in the several voting places in Jefferson County. Aside from any question of financial ability, it is incumbent upon the governing body to provide voting machines for every voting place in the political subdivision where the majority of the voters participating in an election on the question have expressed themselves in favor of such machines, unless the governing body by affirmative action elects not to provide them for voting places where there are less than 100 registered voters. If there are no voting places having as many as 100 registered voters and for that reason the governing body has elected not to install voting machines, then it would be incumbent upon the governing body in a proceeding of this kind to set that fact up as a matter of defense.

■ It is next insisted that the trial court erred in awarding the peremptory writ because petitioner's right to the writ was dependent upon the result of an election and that the result of the election was neither alleged nor proved. The petition specifically avers the number of votes cast in favor of voting machines and the number against. The plurality in favor of the machines is shown to have been 4,243. The respondents stipulated that the result of the election as averred in the petition was correct. It was also stipulated that certificates of result were filed with the county governing body and the Secretary of State. But appellants, respondents below, argue here that according to the averments of the petition the certificate of result of the election was not made in compliance with the method prescribed by § 93, Title 17, Code 1940. But even if it be assumed that the highly technical con-

·struction placed by counsel for appellants ·on the averments of the petition which relate to the manner in which the result of the election was certified is correct, such construction would not render the petition defective. As before shown, the result of the election is definitely averred and such .averments admitted by respondents below. Certainly an irregularity in the manner in which the result of an election is certified cannot be permitted to thwart the will of ·the people. People ex rel. Woods, County Collector, v. Green, 265 Ill. 39, 106 N.E. .504.

Section 97, Title 17, Code 1940, prescribes the type of machines which must be installed and provides that "Before any voting machine is purchased, rented, or leased, the person or corporation owning or manufacturing such machine must give an adequate guarantee, in writing, securing that such machines comply fully with the above requirements and will correctly, accurately and continuously register and re- ·cord every vote cast." Because of such requirements appellants, respondents below, ·insist that their ability to comply with the peremptory writ is contingent upon the further act of a third person and, therefore, the peremptory writ was erroneously ordered.

 There is nothing in the record in this case to indicate that voting machines .of the type prescribed by § 97, Title 17, supra, are not available. We judicially .know and it is a matter of common knowledge that they have been installed in other political subdivisions of this state and have ·been in use for a number of years. The re- ·quirements of § 97, Title 17, supra, fall far short of making it impossible for respondents to comply with the peremptory ·writ which does nothing more than direct respondents to provide voting·machines ac- ·cording to the provisions of Article 7 of Title 17 of the Alabama Code of 1940. It is farfetched to argue that simply because the law prescribes the requirements of ma- ·chines to be installed and requires a guarantee from the seller or lessor that the ·machines meet such requirements, the reme- ·dy by mandamus is unavailable.

██ It is not contended that at the time the petition for mandamus was filed and when the peremptory writ was ordered, Jefferson County was beyond its constitutional debt limit. But it is insisted that to require the county to procure voting machines would work a great hardship in that it would result in lower contributions made for the treatment of indigent patients at Jefferson-Hillman Hospital, or in curtailing work on county roads, or in the reduction of salaries of county employees below a living wage. It is to be regretted that the procurement of voting machines may bring about such results, but the fact remains that in the absence of some constitutional limitation, the action of the voters at the election on November 5, 1940, made it the mandatory duty of the governing body of Jefferson County to provide voting machines, either by purchase, lease or rental. Abrasley v. Jefferson County, supra. It cannot avoid that duty by a finding that county funds needed to provide such machines could be used to better advantage. There is no discretion vested in the governing body as to whether or not it will provide the machines except as to voting places having less than 100 registered voters.

 It is contended that the petitioner below, appellee here, was not entitled to the writ prayed for and granted by the trial court for the reason that the prayer for relief and the relief granted pursuant thereto are void and uncertain.

The prayer for relief and the relief granted in the judgment are not subject to the criticism that they are void for uncertainty. The prayer of the petition is in substance that the respondents be required to forthwith furnish and provide voting machines as provided for by the mandate of the people as shown in the petition. As before indicated, the petition showed the result of the election held in accordance with the terms and provisions of the voting machine law. The judgment ordered, in substance, that a peremptory writ of mandamus issue, directed to the respondents, ordering, directing and commanding them "to furnish and provide voting machines for use in all primary, special and general elections in Jefferson County,

according to the provisions of Article 7 of Title 17 of the Alabama Code of 1940." We do not see how the order could be more specific or certain. Article 7 of Title 17, Code 1940, contains the voting machine law. It was not incumbent upon the court to order the respondents to procure a certain number of machines or to designate the voting places where they were to be used. The cases cited by counsel for appellants are not in point.

The relief sought by the petition and that granted by the judgment appealed from is the performance of a specific act, namely, the procurement of voting machines. In enforcing the observance of the writ the court would not have to undertake to oversee and control the general course of the respondents in regard to the machines after their procurement.

The contention is made that the authority conferred by the election on November 5, 1940, for the county governing body to procure voting machines was not present at the time the petition was filed and the peremptory writ ordered. It is said that such authority was lost because of the long lapse of time between the date of the election and this proceeding, namely, approximately nine years, and because of changes which occurred in Jefferson County with respect to important and vital matters. We cannot agree with this contention.

Section 94, Title 17, Code 1940, provides in pertinent parts as follows: "Where voting machines have been adopted for any county, municipality, or other political subdivision of the state, or for any portion of such county, municipality, or other political subdivision, the county board or the city commission shall, as soon as practicable and in no case later than six months after the adoption thereof, provide for each voting ward or precinct or beat designated, one or more approved voting machines, in complete working order, and shall thereafter preserve and keep them in repair. * * * Wherever, by reason of any constitutional or other legal debt limitation, it shall be impossible for any county or municipality to provide voting machines by either rental, lease or purchase for each election district, as provided herein, then it shall provide as many machines as it shall be possible to procure, and, as soon thereafter as possible, shall provide the remainder of such machines required hereunder. * * *"

Section 95, Title 17, Code 1940, provides in pertinent part as follows: "Any county or city may, by a majority vote of its qualified electors voting thereon at any election held not earlier than six years after the adoption and installation of such machines, direct the discontinuance of the use of voting machines at elections held in such county or city. * * *"

As before shown, we held in Abrasley v. Jefferson County, supra, that by virtue of the referendum election, the governing body of Jefferson County was not only authorized but was *required* to supply voting machines within the limitation of indebtedness fixed by § 224 of the Constitution.

It is clear from this record, and the trial court so found in its judgment ordering the peremptory writ, that for a period of time the county governing body of Jefferson County could not procure voting machines because of the extent of its debt. But it is equally clear that at the time this petition was filed and the judgment ordering the issuance of the peremptory writ, § 224 of the Constitution was no longer a barrier. How long that barrier had been removed does not appear.

The duty to procure the machines was a continuing one and should be performed.

Under the express provisions of § 95, Title 17, Code 1940, there could be no valid election held to determine whether voting machines should be discontinued until the expiration of six years after the adoption and installation of the machines. They have never been installed. Hence, the mere fact that the number of registered voters in Jefferson County had materially increased between the date of the election and the time this proceeding was instituted cannot affect the question. Until machines have been installed under the mandate of the people expressed at the election held in November, 1940, the voters will have no way of determining whether they are satisfactory.

It is argued that in other political subdivisions where voting machines have been installed they have resulted in inconvenience, delay, confusion and dissatisfaction. This may be true, but it is not shown that the use of such machines has ever been discontinued in the manner provided by law. But what may have happened in other places can have no bearing on this question. The voters of Jefferson County have spoken. The machines have not been installed. The County is not beyond its constitutional debt limit. The machines should be installed. If after installation they prove unsatisfactory, then the electorate of Jefferson County may express their disapproval in an election called in the manner and held at the time provided by law. If such disapproval is expressed, then the machines must be discontinued.

The argument that unless the machines are installed within six months after the election, then the authority to install them is lost, is clearly without merit. We think the last sentence of § 94, Title 17, is sufficient answer to that argument. The case of Fuller v. Knight, 241 Ala. 257, 2 So.2d 605, 135 A.L.R. 760, has no application here. We are here dealing with express statutory provisions which require the installation of the machines within six months after the election unless constitutional debt limitations prevent and if so, then the machines must be installed as soon as possible after such limitations have been removed.

In Abrasley v. Jefferson County, supra, as before indicated, we held that under the 1940 election voting machines must be used in municipal elections held in Jefferson County, although the cost of procuring the machines rested solely on Jefferson County. It is insisted that such construction of the so-called voting machine law renders it unconstitutional, in that the legislature is without power to impose upon a county the burden of bearing the governmental expenses of cities and towns located within said county.

County territory does not lose its identity as such by reason of its simple inclusion within the limits of an incorporated city or town. Under the 1940 election, the county must procure, as far as it can without exceeding its debt limit, more machines than are necessary to conduct a municipal election. In other words, the use of the machines in municipal elections does not add to the expense which the county must incur.

Counties are agencies or subdivisions of the State, created by law for more efficient administration of government. Newton v. City of Tuscaloosa, 251 Ala. 209, 36 So.2d 487. The legislature, in absence of constitutional limitation, has plenary power to deal with counties. Young Women's Christian Ass'n of Plainfield, N. J., v. Gunter, 230 Ala. 521, 162 So. 120. Matters of policy as to counties and county funds and how they shall be handled and preserved are matters of legislative policy. Covington County v. O'Neal, 239 Ala. 322, 195 So. 234. It is well settled that the State may appropriate county funds by act of the legislature for public purposes. Jefferson County v. City of Birmingham, 251 Ala. 634, 38 So.2d 844, and cases cited.

We think it well within the power of the legislature to authorize the use in municipal elections of voting machines procured by the county where the use of such machines has been approved only in a county-wide election.

We see no reason to discuss here the questions which were so carefully considered in the Abrasley case, supra. We adhere to that opinion.

The judgment appealed from is affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.