**Earl C. MOODY et al., Plaintiffs,**

v.

**Richmond M. FLOWERS et al., Defendants.**

**John B. STEVENSON et al., Plaintiffs,**

v.

**Richmond M. FLOWERS et al., Defendants.**

**Civ. A. Nos. 860, 693.**

United States District Court M. D. Alabama.

June 14, 1966.

Civ. A. No. 860–S:

C. R. Lewis, Dothan, Ala., for plaintiffs.

Richmond M. Flowers (pro se), Atty. Gen., State of Alabama, Gordon Madison and Walter Turner, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for defendant Richmond M. Flowers.

Roy Mayhall, Jasper, Ala., pro se.

Sam C. Pointer (Brown, Pointer & Pointer), Birmingham, Ala., for Thomas H. Brigham and Alfred J. Saliba, defendants.

John C. Godbold (Godbold, Hobbs & Copeland), Montgomery, Ala., W. G. Hardwick and Jere C. Segrest, Dothan, Ala., for defendants Carl E. Sellers, James Herring, W. G. Bond, J. W. Calhoun, W. H. Hicks, W. E. Yance.

William G. Hause, Dothan, Ala., pro se.

Civ. A. No. 693–E:

Lewis H. Hamner, Jr., Roanoke, Ala., for plaintiffs.

Richmond M. Flowers (pro se), Atty. Gen., State of Alabama, and Gordon Madison, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendant Flowers.

Sam C. Pointer (Brown, Pointer & Pointer), Birmingham, Ala., for Alfred W. Goldthwaite [successor to Thomas H. Brigham], defendant.

Paul J. Hooton (Hooton & Hooton), Roanoke, Ala., for defendants C. W. Thompson, Grover L. Poole, Sam Carpenter, Jr., Fred McCain, Gay Foster, Guy Henderson, and W. C. Beverly.

Roy Mayhall, Jasper, Ala., pro se.

Stell Benefield, Wedowee, Ala., pro se.

James Peek, Roanoke, Ala., pro se.

Before GEWIN, Circuit Judge, and LYNNE and JOHNSON, District Judges.

LYNNE, District Judge.

Consolidated for purpose of trial, these actions involve common questions of law and fact. Positing jurisdiction upon the provisions of 42 U.S.C.A. §§ 1983 and 1988 and 28 U.S.C.A. § 1343 (3) each complaint seeks judicial intervention in the internal political affairs of a county.

No. 860–S (Houston County, Alabama)

The relevant facts may be severely capsulated. Houston County is divided into fourteen election precincts, commonly referred to as "Beats." Its Board of Revenue and Control (Board) consists of five members, each elected by the qualified electors of the district of which he is a resident. In tabular form the five districts are described as follows:

District No. 1, comprising Beats 1, 2 and 4, contains 1,224 electors;

District No. 2, comprising Beats 5, 6, 7 and 11, contains 1,722 electors;

District No. 3, comprising Beats 10, 12 and 14, contains 1,450 electors;

District No. 4, comprising Beats 8, 9, and 13 contains 1,368 electors;

District No. 5, comprising Beat 3 (the City of Dothan), contains 9,046 electors.

According to the 1960 census the total population of Houston County was 50,718 and that of the City of Dothan was 31,440, or about 61% of the total. While an exact head count is not available, it may be inferred that the population of Districts 1, 2, 3 and 4 approximates the ratio of its qualified electors to the total population of the county, less that of the City of Dothan, as compared with the ratio of qualified electors within such city to its known population.

The above-described division of the county into districts and apportionment of membership of the Board resulted from the enactment of Act No. 9 of the 1957 Regular Session of the Legislature of Alabama (Acts of Alabama, Reg.Sess. 1957, No. 9, p. 30), effective May 24, 1957. Its constitutionality when tested by the equal protection clause of the fourteenth amendment is attacked by plaintiffs.

From official records it appears that the total assessed value of property within the county for ad valorem tax purposes is $30,621,030, of which amount property within the City of Dothan accounts for $21,217,120. There being no substantial evidence of hostile treatment of the City of Dothan by the Board, the facts suggest but one arguable contention of proscribed discrimination. Sixty-one per cent of the population of the county, owning 69% of the assessed value of the property therein, are represented by only one of five Board members and therefore have only a 20% voice in the levying of taxes and

the expenditure of monies collected therefrom by the county.[1]

### No. 693–E (Randolph County, Alabama)

Randolph County is divided into fourteen election precincts (Beats). Its Court of County Commissioners consists of four members, each elected by the qualified electors of the district of which he is a resident. The four districts are described as follows:

District No. 1, comprising Beats 1, 6 and 14, having a population of approximately 3,800;

District No. 2, comprising Beats 2, 3, 7 and 13, having a population of approximately 2,350;

District No. 3, comprising Beats 4, 5 and 11, having a population of approximately 4,300;

District No. 4, in which the City of Roanoke is situated, comprising Beats 8, 9, 10 and 12, having a population of approximately 9,500.

This division of the county into districts and apportionment of membership of the court resulted from interplay of the provisions of Acts Nos. 299 and 300 of the Regular Session of the Legislature of Alabama, each effective August 10, 1965. When Act No. 299 was ratified by a county-wide referendum on November 30, 1965, Act No. 300 became operative.

From official records it appears that the total assessed value of property within the county for ad valorem taxes is $15,539,840, of which amount property situated within District No. 4 accounts for $9,984,590. The only possible constitutional argument which plaintiffs can muster is that because, after the general election in November, 1966, the residents of District No. 4, constituting 49% of the total population and owning 64% of the total assessed value of property in the county, will have only a 29% voice in the levying of taxes and the expenditure of monies collected therefrom by the county,[2] the acts producing this result are violative of the equal protection clause of the fourteenth amendment.

The prayers of plaintiffs for ultimate relief in these two cases are identical: (1) that the underlying acts of the Alabama Legislature be declared unconstitutional; (2) that it be required that the members of board and court be elected at large by the votes of all qualified electors within the county, or (3) that

1. An Alabama county has no inherent power to tax. It can impose only such tax, on such subject, under such circumstances, and within such rate as the state authorizes.

The ad valorem tax on property, available for payment of general county expenses, is prescribed by section 215 of the Alabama constitution, and the maximum rate is there set. Ala.Code tit. 51, § 71 (1940) (Recomp.1958) directs the board to levy this tax and for what purposes and on what property valuations. The language is mandatory and the levy is part of a detailed statutory scheme for valuation assessments, appeals therefrom, and assessment of escapes. Failure of the board to levy could be the subject of mandamus. Slaughter v. Mobile County, 73 Ala. 134 (1882).

With respect to the levying of special taxes, the power of the board is severely limited by the Alabama constitution. Thus, amendment 208 provides that no county in Alabama is authorized to levy a greater rate of taxation in any one year on the value of the taxable property therein than one-half of one per centum, except that for debt created for the erection of necessary public buildings, bridges, or roads, a county may levy and collect special taxes not to exceed one-fourth of one per centum. Amendment 202 provides for the levy of an educational tax and amendments 59 and 72 provide for the levy of hospital taxes only upon a vote of the people without regard to districts.

Ala.Code, tit. 12, § 130 (1940) (Recomp.1958) provides that, out of the proceeds of any road tax levied by a county governing body, one-half of the money collected on property within the municipality must be paid to the municipality for use by it in maintaining its streets.

Finally, it is settled law in Alabama that the county's authority to tax is derived from the legislature and may be withheld, withdrawn, or modified (subject to intervening contractual rights). Newton v. City of Tuscaloosa, 251 Ala. 209, 36 So.2d 487 (1948).

2. See the discussion in note 1 supra.

the elective districts by judicial fiat be reapportioned on the basis of population.

In the final analysis, plaintiffs are forced to fall back upon the argument that a purely mechanical application of the "one person, one vote" apothegm of Gray v. Sanders[3] to non-sovereign political subdivisions of a state is required by the equal protection clause of the fourteenth amendment. No opinion of the Supreme Court has suggested such a basis for judicial intervention in a state's geographical distribution of electoral strength among its political subdivisions.[4] On the contrary, militating against such an openhanded approach is the reasoning of Mr. Chief Justice Warren in Reynolds v. Sims, 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506 (1964):

> "Political subdivisions of States— counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions. As stated by the Court in Hunter v. City of Pittsburgh, 207 U.S. 161, 178, 28 S.Ct. 40, 46, 52 L.Ed. 151, these governmental units are 'created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them,' and the 'number, nature, and duration of the powers conferred upon [them] * * * and the territory over which they shall be exercised rests in the absolute discretion of the state.'" (Emphasis added.)

As we read Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and its progeny, to justify judicial penetration of the "political thicket," there must co-exist a serious wrong, as for example the long-continued failure of a legislature through inertia, apathy, or willful refusal to reapportion itself in obedience to the mandate of the state law,[5] the whimsical relocation of the boundary lines of a local government for the obvious purpose of depriving Negroes of their right to vote,[6] or the absence of a political remedy resulting from the "stranglehold" of a minority on the legislative processes.[7]

The numerical imbalance demonstrated by simple statistics falls far short of proving invidious discrimination. The Houston County Board, as presently constituted, has been in existence for less than ten years, and the Randolph County Court, under the acts complained of, will not come into being until after the general election in November of this year. Neither has the power to reapportion itself. The Legislature of Alabama, which alone has the power to redistrict

---

3. 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).

4. Prior to 1962, federal courts historically had refused to interfere with the arrangement of internal political subdivisions of the states. In South v. Peters, 339 U.S. 276, at 277, 70 S.Ct. 641, at 642, 94 L.Ed. 834 (1950), in a per curiam opinion, the Supreme Court stated:

   "Federal courts consistently refuse to exercise their equity powers in cases posing political issues arising from a state's geographical distribution of electoral strength among its political subdivisions [citing cases]."

5. Burns v. Richardson, (U.S. 86 S.Ct. 1286, April 25, 1966); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Maryland Comm. v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Simcock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).

   To the foregoing authorities dealing with legislative apportionment may be added Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964) (apportionment of congressional districts) and Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963) (county-unit system as applied in a statewide election).

6. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).

7. Cases cited in note 5, supra.

these counties, has never been advised by any definitive mandate that it has a duty to do so.

Moreover, of equal if not greater importance, in the Houston County case the plaintiffs and the urban voters they represent have a clearly available political remedy. Surely the 61% of the qualified electors of Houston County who reside within the City of Dothan have the power at the ballot box to elect representatives to the state legislature and through them, under the prevailing rule of local courtesy, obtain the desired redistricting.

It is our considered opinion that so long as the people of a state are afforded equal protection by true equality of representation in the state legislature the courts ought not to interfere with county governments of limited, as distinguished from general, power, and which have been created by the legislature as involuntary political subdivisions of the state.[8] This is especially true where such governments are not granted the power to reapportion themselves.

When the Alabama Legislature shall have been constitutionally reapportioned in conformity with the standards explicated in Sims v. Frink,[9] to it may safely be committed the decision as to whether all county governments should be apportioned strictly according to population or whether in some counties, including these two, there exists "a rational justification" for some other form of districting.[10]

It is not for us to forecast the likelihood that the Supreme Court will ultimately extend the principles of Reynolds v. Sims, supra, to the tens of thousands of subordinate political units of the states to which have been delegated some power to which the label "legislative" may be attached. Some courts have essayed to do so,[11] while others have been content to await the development of judicial standards in this comparatively uncharted area of constitutional law.[12] A warning to make haste slowly may be read into refusal by the Supreme Court on two occasions to consider cases involving the contention that the federal constitution requires local governmental bodies below the state level be apportioned on a population basis.[13]

An analysis of the powers delegated to courts of county commissioners in Alabama for the purpose of affixing the labels, "judicial," "executive," "legislative," "administrative" and "ministerial" would be a profitless exercise in semantics. In broad summary, the legislative power of such courts may be described as (1) granted by the legislature; (2) quasi-legislative in the sense that it

---

8. Kendrick v. State ex rel. Shoemaker, 256 Ala. 206, 54 So.2d 442 (1951); Moore v. Walker County, 236 Ala. 688, 185 So. 175 (1938); Montgomery v. State, 228 Ala. 296, 153 So. 394 (1934); Askew v. Hale County, 54 Ala. 639 (1875).

9. 208 F.Supp. 431 (M.D.Ala.1962).

10. Baker v. Carr, 369 U.S. 186, 235, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

11. Ellis v. Mayor and City Council of Baltimore, 234 F.Supp. 945 (D.Md.1964); Simon v. Lafayette Parish Police Jury, 226 F.Supp. 301 (W.D.La.1964); Bianchi v. Griffing, 217 F.Supp. 166 (E.D.N.Y. 1963); Brower v. Bronkenia, Cir. Ct. for Kent County, Michigan (Sept. 11, 1964); Seaman v. Fedourich, 45 Misc.2d 940, 258 N.Y.S.2d 152 (Sup.Ct.1965); Goldstein

v. Rockefeller, 45 Misc.2d 778, 257 N.Y.S. 2d 994 (Sup.Ct.1965); State ex rel. Sonneborn v. Sylvester, 25 Wis.2d 177, 130 N.W.2d 569 (1964).

12. McMillan v. Wagner, 239 F.Supp. 32 (S.D.N.Y.1964); Johnson v. Genesee County, Michigan, 232 F.Supp. 567 (E.D. Mich.1964); Tedesco v. Board of Supervisors of Elections for the Parish of Orleans, 43 So.2d 514 (La.Ct.App.1949); Glass v. Hancock County Election Comm'n, 250 Miss. 40, 156 So.2d 825 (1963).

13. Glass v. Hancock County Election Comm'n, 378 U.S. 558, 84 S.Ct. 1910, 12 L.Ed.2d 1035 (1964) (per curiam); Tedesco v. Board of Supervisors of Elections for the Parish of Orleans, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1950) (per curiam).

has less than the power to make fundamental law; (3) limited in scope to, and operating within, only the areas authorized by the legislature for county action; (4) exercised by a body vested with judicial power; (5) neither administrative nor executive nor judicial.[14]

■ It is our firm opinion that the limits imposed by the Alabama constitution on the delegation of power by the state legislature prevent such courts from having or exercising the qualitative or quantitative legislative power which is significant under Baker v. Carr. Section 44 thereof vests legislative power in the legislature and the constitutional power to make laws may not be delegated.[15]

■ We therefore conclude that plaintiffs have been deprived of no rights under the prevailing rationale of pertinent Supreme Court opinions, epitomized by Mr. Justice Black as follows: "No right is more precious in a free country than that of *having a voice in the election of those who make the laws under which, as good citizens, we must live.* Other rights, even the most basic, are illusory if the right to vote is undermined." (Emphasis added.)[16] Accordingly, an order will be entered dismissing each of these actions without prejudice.

JOHNSON, District Judge (dissenting).

I respectfully dissent.

I think the conclusion is inescapable that the principles of Reynolds v. Sims [1] —that is, the principles of equality among voters within a state and the fundamental precept that representative government is one of equal representation for an equal number of people without regard to race, sex, economic status, or place of residence [2]—apply to these local organs of government. These boards of revenue perform important governmental functions, and are designed to be controlled by the voters over which they have jurisdiction. The exercise of their powers, which include the important powers to levy and collect taxes,[3] to spend for a variety of governmental and public purposes,[4] and to establish, change, discontinue, and repair roads,[5] materially and substantially affects the lives, property, and welfare of the citizens of Houston and Randolph Counties. Moreover, in discharging their duties, the boards are no less representative or reflective of the views of the citizens because they are smaller than the state unit. To the contrary, rather than limit the principles of *Reynolds*, as the majority opinion does, it would seem that these principles might well have their most meaningful application at the local level.

14. By Ala.Code, tit. 12, § 5 (1940) (Recomp.1958) the court of county commissioners is constituted a court of record. Sections 11 and 12 define its original jurisdiction and spell out many of its powers. Commingled are powers which may be characterized as judicial, executive and legislative. See State ex rel. McIntyre v. McEachern, 231 Ala. 609, 166 So. 36 (1936) ; Tuscaloosa County v. Alabama Great Southern RR., 227 Ala. 428, 150 So. 328 (1933) ; State ex rel. Chilton County v. Butler, 225 Ala. 191, 142 So. 531 (1932) ; Askew v. Hale County, supra, note 8. In State ex rel. McIntyre v. McEachern the Supreme Court of Alabama described such court as an administrative body, as a court, and "sometimes it acts somewhat in a legislative capacity." 231 Ala. at 612, 166 So. at 38.

15. Fox v. McDonald, 101 Ala. 51, 13 So. 416, 21 L.R.A. 529 (1893).

16. Wesberry v. Sanders, 376 U.S. 1, 18, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

1. 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed. 2d 506 (1964).

2. These principles had been nurtured a year earlier in Wesberry v. Sanders, 376 U.S. 1, 18, 84 S.Ct. 526, 535, 11 L.Ed. 2d 481 (1964) : "[O]ur Constitution's plain objective [is] * * * making equal representation for equal numbers of people the fundamental goal * * *. That is the high standard * * * which the Founders set for us."

3. See Title 12, §§ 12(3), 185, 186, 191; Title 51, § 71; Title 29, § 31, Code of Alabama.

4. See Title 12, §§ 11, 12, 16, 17, 18, 19, 22, Code of Alabama.

5. See Title 12, § 11, Code of Alabama.

Viewed another way, if, as seems evident, the thrust of the Supreme Court decisions is that it is inherent within the concept of "equal protection" that a person has a substantial right to be heard and to participate, through his elected representatives, in the business of government on an equal basis with all other individuals, no reason or justification exists for differentiating so far as that right is concerned, between governmental business carried on at the state level and that conducted on the local level.

The two cases primarily relied on by the majority are Glass v. Hancock County Election Commission, 156 So.2d 825 (Miss.1963), and Tedesco v. Board of Supervisors of Elections, 43 So.2d 514 (C.A.La.1949). In *Glass*, the Supreme Court of Mississippi had affirmed the denial of injunctive relief on the theory that there was an adequate remedy at law, namely, available statutory procedures for redistricting. Accordingly, I do not find dismissal of the appeal by the Supreme Court, 378 U.S. 558, 84 S.Ct. 1910, 12 L.Ed.2d 1035 (1964), either controlling or indicative of the course this Court should follow. In *Tedesco*, the Louisiana appellate court concluded that the statute therein involved was not violative of any provision of the Constitution, although there was clear disparity of population, and affirmed the judgment dismissing the suit. Plaintiff's appeal to the Supreme Court was "dismissed for want of a substantial federal question." 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1950).

Reliance on *Tedesco*, in the cases now before this Court, is misplaced. First, I find it very difficult to accept the proposition that *Tedesco*, decided in 1950, can be taken to indicate a judicial attitude on the part of the Supreme Court "to make haste slowly" in the application of a doctrine formulated in 1964. Second, I think it is important to emphasize that *Tedesco* did not hold that the Equal Protection Clause did not extend to the rights of voters in municipal elections or that no relief for the deprivation of the constitutional right of equal representa-

tion was available in the federal courts. *Tedesco* merely held that under the doctrine then prevailing the question of reapportionment was not justiciable. On this point, *Tedesco* was revoked by the Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962):

> [T]he refusal to award relief in *Colegrove* resulted only from the controlling view of a want of equity. *Nor is anything contrary to be found in those per curiams that came after Colegrove.* (Emphasis added.) 369 U.S. at 234, 82 S.Ct. at 719.

Justice Clark, concurring in *Baker*, said this of *Tedesco*:

> Similarly, the Equal Protection Clause was not invoked in Tedesco v. Board of Supervisors [of Elections, La.App., 43 So.2d 514] * * *. 369 U.S. at 252, n. 2, 82 S.Ct. at 729.

And Justice Douglas, also concurring in *Baker*, said:

> With the exceptions of Colegrove v. Green * * * and the decisions they spawned, the Court has never thought that protection of voting rights was beyond judicial cognizance. *Today's treatment of those cases removes the only impediment to judicial cognizance of the claims stated in the present complaint.* 369 U.S. at 249–250, 82 S.Ct. at 727. (Emphasis added.)

Thus, if anything, the rejection of Tedesco by Baker indicates the question is appropriate for judicial consideration.

Moreover, as a general proposition, I do not find anything sufficiently extraordinary about these cases which would justify a court's refusing to grant relief on the basis that "It is not for us to forecast the likelihood that the Supreme Court will ultimately extend the principles of Reynolds v. Sims to the * * * subordinate political units of the states * * *." Thus, just as this Court did not hesitate to consider the propriety of applying the newly developed principles of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), to the area of public transportation in Browder v. Gayle, 142 F.Supp.

707 (M.D.Ala.), aff'd per curiam, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (1956)—even though Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1133, 41 L.Ed. 256 (1896), had not been expressly overruled—or, in recognizing new developments in the area of due process of law, to consider, without the Supreme Court's first having done so, whether women should be allowed to serve on juries, White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966), we should not in the present cases cling to the doctrine of an older jurisprudence *(Tedesco)*, or, in the cloak of judicial restraint. and forbearance, decline to exercise jurisdiction in cases where the right to judicial relief is clear.

Nor do I find the argument that so long as the people of a state are afforded equal protection by true equality of representation in the state legislature the courts ought not to interfere with county governments "which have been created by the legislature as involuntary political subdivisions of the state." It cannot seriously be contended that the proscriptions of the Fourteenth Amendment do not extend to local governments, or that the states may conduct their affairs with absolute discretion through their local agencies or appendages without recognizing and complying with basic constitutional principles. In Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), the Court stated:

[T]he prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action * * * or whatever the guise in which it was taken * * *. 358 U.S. at 17, 78 S.Ct. at 1409.

In this connection, see also Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), where the Court stated:

Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution. * * *

* * * * * *

The opposite conclusion * * * would sanction the achievement by a State of any impairment of voting rights whatever so long as it was cloaked in the garb of the realignment of political subdivisions. 'It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.' 364 U.S. at 344–345, 81 S.Ct. at 129.

It was on the basis of these authorities and this reasoning that the Supreme Court of Wisconsin concluded in the case of State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249 (1964):

Characterizing counties as "political subdivisions created to perform functions of the state locally and existing as a result of the superimposed will of the state" or as "pure auxiliaries of the state" or as "an arm of the state" or "local organizations" which rank low down on the scale or grade of corporate existence," or "quasi municipal corporations" * * * is not determinative of whether the 14th Amendment applies to their composition when the members of a county board are determined by the elective process.

* * * * * *

County boards * * * must be considered a unit of government which should be equally representative of the people of the county. 26 Wis.2d at 55–56, 132 N.W.2d at 555.

It was also in recognition of these clear principles that Justice Fuld, speaking for the highest court in the State of New York, in Seaman v. Fedourich, 16 N.Y. 2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778 (1965), stated:

It is axiomatic that local governmental units are creations of, and exercise only those powers delegated to them by, the State * * * and, certainly, if the latter may exercise its legislative powers only in a body constituted on a population basis, any general elective municipal organ to which it delegates certain of its powers must, by a

parity of reasoning, be subjected to the same constitutional requirement. 262 N.Y.S.2d at 449, 209 N.E.2d at 782.

One of the primary bases for my being unable to agree with the majority lies in the logic of this position. The judicial support for such position is impressive.[6]

Finally, the majority opinion indicates that "The Legislature of Alabama, which alone has the power to redistrict these counties, has never been advised * * * to do so." It is, of course, true that the policy of courts in the area of reapportionment has been to accord petitioners a full opportunity to avail themselves of whatever political remedy they might have.[7] In invoking such a judicial policy, however, the proper procedure is not to dismiss the petitions, but to retain jurisdiction and stay the proceedings to allow the State a reasonable time to adopt a valid scheme of reapportionment. I would concur in such a disposition of the cases. For the several reasons stated, I cannot concur in the dismissal of these cases.

6. See Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D.Pa.1965) (local school board) ; Bianchi v. Griffing, 238 F.Supp. 997 (E.D.N.Y.1965) (county board of supervisors) ; Damon v. Lauderdale County Election Commissioners, Nat'l Municipal League, Court decisions on Legislative Reapportionment, Vol. 13, p. 139 (Civil Action No. 1197–E, U.S. Dist. Court, S.D.Miss., Oct. 21, 1964) ; Ellis v. Mayor and City Council of Baltimore, 234 F.Supp. 945 (D.Md.1964) (city council) ; Hanlon v. Towey, 142 N.W.2d 741 (Supreme Court of Minn., May 20, 1966) (county commissioners) ; Angostini v. Lasky, 46 Misc.2d 1058, 262 N.Y.S.2d 594 (1965) (county board of supervisors) ; Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444 (1965) (city council) ; Mauk v. Hoffman, 209 A.2d 150 (1965) (county board of freeholders) ; Matter of Goldstein v. Rockefeller, 45 Misc.2d 778, 257 N.Y.S.2d 994 (1964) (county board of supervisors) ; State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249 (1964) ; Brouwer v. Bronkema, Case No. 1855, Cir. Court Kent County, Mich. 1964, (board of supervisors). See also Lynch v. Torquato, 343 F.2d 370, 371–372 (3rd Cir. 1965).

7. See the procedure followed by this Court in Sims v. Frink, D.C., 208 F.Supp. 431 (1962), and Sims v. Baggett, 247 F.Supp. 96 (1965), where in recognition of the judicial policy of affording citizens, through their legislature, a reasonable opportunity to secure their political remedies, this Court, after recognizing the controlling constitutional principles, at first afforded the Alabama Legislature an opportunity to reapportion, and then, upon its failure to do so, acted only moderately and provisionally with the expressed hope that the Legislature would then provide for true reapportionment. The Supreme Court of the United States, in Reynolds v. Sims, supra, 377 U.S. at page 586, 84 S.Ct. at page 1394 expressly approved such a procedure when it stated: "We feel that the District Court in this case acted in a most proper and commendable manner. * * * And it correctly recognized that legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."