Domenick L. Gxbrielli, J.
On December 11, 1962, the Common Council of the City of Rochester enacted a local law entitled: “ A local law to amend chapter seven hundred fifty-five of the laws of nineteen hundred seven as amended, entitled 1 an act constituting the charter of the city of Rochester ’ in relation to the boundaries of wards in the city of Rochester.” (Local Laws, 1962, No. 15 of City of Rochester.) This local law changed the boundaries of the wards in the City of Rochester. From the electors of the city, Supervisors on the Monroe County Board of Supervisors are elected from each ward of the city. It appears that the number of wards and supervisory districts were not changed; merely the boundaries.
Prior to the argument of this motion for a dismissal of the complaint, the plaintiff (Brairton) was deleted by stipulation of the parties to the action.
*1010 This action, in its present form, is brought by William E. Kelly, individually and as Supervisor of the 6th Ward of the City of Rochester, and on behalf of all qualified voters of the city. The remaining plaintiffs sue individually and on behalf of all the qualified voters of the city as well.
The complaint attacks the validity of the local law and asks for judgment (1) declaring it null and void; (2) for a determination directing the Common Council to make new ward boundaries; and in the alternative (3) for the appointment of a Referee to redesignate ward boundaries.
The main force of the argument upon the return date of the motion was directed toward the claim of the defendants that the complaint does not state facts sufficient to constitute a cause of action. We shall, therefore, direct our attention to that phase of the controversy.
In so doing, and solely for the purpose of this motion, the facts alleged in the complaint will be deemed to be true.
The complaint, in essence, charges the defendants with changing the ward boundaries without employing reasonable standards or criteria; that the changes were made for political gain; and further that the action of the Common Council in so doing was arbitrary and capricious.
In forwarding these contentions, the plaintiffs must, of necessity, have assumed that the Common Council had the right to enact a law. The raising of the issue of motive assumes the right to enact legislation to alter ward boundaries.
More compelling, however, is the constitutional and legislative authority for this power to which we shall herein refer.
What, therefore, is the legal effect of the claim of unreasonableness on the part of the city as well as the charges of “ capricious and arbitrary ” actions alleged in the complaint?
An examination of the complaint does not reveal any claim that the city lacked the power to alter ward boundaries. There is no such charge. The complaint basically questions not the ability of the Common Council to adopt a local law changing the ward boundaries, but that the Council acted arbitrarily, capriciously and with illegal and improper motives in its enactment.
The power of a city to alter its ward boundaries is constitutionally authorized and, by legislative enactment has been delegated to these municipalities.
The People of this State have withheld from the Legislature, the power to enact laws concerning the “ property, affairs, or government ” of cities (N. T. Const., art. IX, § 11) and have, at the same time, granted home rule powers to them entitling *1011 and authorizing them to perform the acts which are the subject of the present controversy. (N. Y. Const., art. IX, § 12; City Home Rule Law, § 11.)
Section 12 of article IX of the New York State Constitution provides, in part, and insofar as it is applicable here, that “ Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government.” Section 11 of the City Home Rule Law contains similar language and creates the same rights and powers.
After reviewing the constitutional provisions relating to home rule powers and the legislative enactments contained in the City Home Rule Law, the Court of Appeals in Baldwin v. City of Buffalo (6 N Y 2d 168, 174) stated that “the alteration of ward boundaries is properly an affair of the municipality ” and, therefore, comes within the powers created by the Constitution and legislative provisions.
In effect, therefore, at least in respect to the changing of ward boundaries, the State has surrendered its powers and a city does have full legislative power. Basically, the present controversy concerns the meaning of “ full legislative power ”.
This is legislative power that is delegated by constituted authority and, perforce, carries with it the manner of exercising that power in all its phases and spectrum as well as its detail and mode of application.
The sole question before this court is whether the Common Council acted within the legal orbit of the powers granted to it by the New York State Constitution and the Legislature. If it did, then there is no foundation for the present suit. This court is neither called upon nor permitted to pass upon the propriety of any alleged motives in the enactment of the local law.
Having established the legislative authority to enact local laws which have to do with this area of government, we then become relegated to the question of whether we may inquire into any of the alleged motives of the members of the Common Council in the enactment of this law. We think not. It has been held that neither the reasonableness of the enactments of local legislators nor their motives may be questioned when the Legislature has conferred legislative power upon the local body. (Baldwin v. City of Buffalo, 6 N Y 2d 168, supra; Blanshard v. City of New York, 262 N. Y. 5, 13; McCabe v. City of New York, 213 N. Y. 468, 484.)
It might be well to here note that the complaint does not allege (nor was it urged upon the argument) that the defend *1012 ants in altering the ward boundaries, were required by law to do so upon the equality of population. There is, in any event, no statutory or constitutional requirement that a city must base a change in its ward boundaries upon equality of population. As a matter of fact, our courts have held that equality of population in political districts of a city is not required under the policy of the law. (People ex rel. Boyle v. Cruise, 197 App. Div. 705, 707-708, affd. 231 N. Y. 639.)
This is not a case of first impression. In 1959, a parallel situation was presented for determination by the courts (Baldwin v. City of Buffalo, supra), involving the realignment of ward boundaries under a local law passed by the City of Buffalo. As in the case at bar, the person who brought that action to have the law declared null and void, was a Supervisor who resided in the City of Buffalo.
In the second cause of action in the complaint, the same charges and claims were made as here, to wit: that the City Council had failed to use proper standards in changing the ward boundaries and, among other things, that the sole motive (par. 32 of Baldwin complaint) in enacting the local law in that city was to “ gerrymander ” areas in connection with the election of the members of the Board of Supervisors.
The Supreme Court at Special Term granted the defendant city’s motion for judgment dismissing this cause of action. In granting the defendant city’s motion to dismiss this cause of action the court held that the city’s power to so legislate was full and complete. In addition (and important to the present litigation) the court further held that the motives of the City Council as well as the reasonableness of the local law could not be questioned. In affirming the dismissal of the second cause of action in the Baldwin ease, the Court of Appeals said (p. 172): “ We affirm the finding that the local laws are not unreasonable for the reasons stated by the Supreme Court ”.
For the reasons herein set forth, the motion to dismiss the complaint is granted, without costs.
Finally, it might be well to here add that the question of a referendum has neither been suggested nor is it involved in this proceeding. The court (see Baldwin v. City of Buffalo, supra) have already spoken on this subject and it has been held that the question of a referendum is not presented under these circumstances.
Because of the conclusion herein reached, a determination of the other claims made by the defendants becomes academic.