Daniel E. Macken, J.
This action, in the form of a special proceeding, is allegedly brought pursuant to section 5 of article III of the New York Constitution and sections 1 through 5 of chapter 773 of the Laws of 1911. The petitioners, citizens and voters of the Town of Irondequoit, ask that the court declare the apportionment of the Board of Supervisors of the County of Monroe unconstitutional; declare section 150 of the County Law unconstitutional; provide for the temporary continuance of governmental functions pursuant to such terms and condi *780 tions as the court may direct; direct the Board of Supervisors to forthwith reapportion itself subject to the review of this court or, in the alternative, require all future elections to be at large until such time as the board shall be properly apportioned; appoint a referee who shall properly apportion the Legislature of the county without reference to municipal boundaries pursuant to the orders of the court; and for such other relief as may be proper.
Although none of the respondents has questioned the jurisdiction of this court to entertain the action, I do not believe that the cited provisions of the State Constitution and unconsolidated laws are applicable to this proceeding. Article III of the Constitution refers only to the State Legislature. Section 5 of the article, entitled “ Apportionment of assemblymen; creation of assembly districts ”, contains a provision that “ An apportionment by the legislature, or other body, shall be subject to review by the supreme court, at the suit of any citizen, under such reasonable regulations as the legislature may prescribe ”. It is apparent that chapter 773 of the Laws of 1911 was enacted to implement that constitutional provision. Section 5 of article III requires that the board of supervisors of a county entitled to more than one assemblyman, or the common council or comparable body of a city comprising an entire county, define the boundaries of the assembly districts allotted to such county or city. It is apparent that the apportionment by another “ body ” has reference only to an apportionment of assembly districts by the board of supervisors or council of such a county or city.
None of the respondents has sought dismissal of the proceeding because of its form and all seem desirous that the issues be determined on the merits. The Attorney-General has suggested that the proceeding is essentially in the nature of mandamus to compel an apportionment and, as such, should be considered a proceeding under article 78 of the CPLR.. “ Generally speaking, an article 78 proceeding is not maintainable against a legislative body to test the validity of its legislative acts. Clearly, stioh a proceeding does not lie to review action which is legislative in nature or to compel a legislative body to enact particular legislation.” (Matter of Pelham Jewish Center v. Board of Trustees, 9 Misc 2d 564, affd. 6 A D 2d 710; see, also, Matter of Spano v. Close, 266 App. Div. 1023; Matter of Fisenne v. Bay Ridge Dist. Local Bd., 250 App. Div. 460; Matter of Soule v. Town of Perinton, 141 N. Y. S. 2d 167.)
I shall therefore consider the petition a complaint, the petitioners plaintiffs, and the respondents defendants, in an action *781 for declaratory judgment and other relief, and that there is now before me a motion by plaintiffs for summary judgment.
Upon the argument the Attorney-General moved that defendants Governor, Attorney-General, and Legislature of the State of New York be dropped as parties and that the Attorney-General be heard as intervener in support of the Constitution and statutes under CPLR 1012 (sutod. [to]) or, in the alternative, that the State of New York be made a party and the Attorney-General heard for such purpose. The petitioners have consented that the Attorney-General be dropped as a party and the motion to that extent is granted and the State of New York substituted as a defendant.
In Bianchi v. Griffing (238 F. Supp. 997) involving issues with respect to the Suffolk County Board of Supervisors similar to those here presented, the defendants apparently questioned the failure to make State officials parties to the action. In its decision the court said (p. 1004): “ To deny federal jurisdiction here because state officials have not been made defendants will serve no useful purpose; the defect, if such, is remediable ”. As stated by that court (p. 1003): “ The counties in New York are not established nor are their boundaries drawn toy the State Constitution; they are entirely creatures of the legislature. The legislature has the power to alter, amend or even abolish the present charter and its provisions for a Board of Supervisors.” 1 ‘ A declaratory judgment, which has the force of a final judgment * * # ‘ serves a legitimate purpose where all persons who are interested in or might be affected by the enforcement of * * * “ rights ’ ’ and ‘ ‘ legal relations ’ ’ and who might question in a court the existence and scope of such rights, are parties to the action and have opportunity to be heard’”. (Wood v. City of Salamanca, 289 N. Y. 279, 282.)
The procedures to be followed in implementing a finding that a local legislative body is illegally apportioned are, at this writing, far from well charted, and I would prefer to see too many parties to this action for a declaratory judgment than not enough. The motion to drop as parties the Governor and the Legislature of the State of New York is denied.
By letter the petitioners have asked permission to amend the petition to allege “ that petitioners sue herein for themselves and all others similarly situated ”. The application is granted and the petition will be so amended.
This action is based on an allegation that the present apportionment of members of the Monroe County Board of Supervisors fails to comply with the so-called “ one person, one vote ” *782 principle enunciated by the United States Supreme Court in Baker v. Carr (369 U. S. 186), Reynolds v. Sims (377 U. S. 533), and other cases decided simultaneously with the latter, and thus is violative of the equal protection clause contained in the Fourteenth Amendment of the United States Constitution.
The County of Monroe consists of the City of Rochester and 19 towns. By its charter the city consists of 24 wards, each of which has one supervisor. By the provisions of section 20 of the Town Law, each of the 19 towns has one supervisor. By the provisions of section 150 of the County Law, the Supervisors of the city wards and of the towns constitute the Monroe County Board of Supervisors. Each Supervisor has one vote on the board.
No one has questioned the population figures set forth in the petition. Based on the 1960 census, Monroe County had a citizen population of 586,387 of which 318,611 resided in the City of Rochester and 267,776 in the 19 towns. The citizen population of the city wards varied from 6,965 in the 8th ward to 24,595 in the 21st ward. Nine wards had populations under 10,000, twelve between 10,000 and 20,000, and three wards had populations of over 20,000. Population of the towns varied from 2,339 in Clark-son to 55,337 in Irondequoit. Six towns had populations of less than 5,000; three between 5,000 and 10,000; seven between 10,000 and 20,000; one 27,000, one 48,000, and one 55,000. The 22 least populous wards and towns, representing a quarter of the citizen population of the county, elect a majority of the Board of Supervisors. No further computations are required to reach the conclusion that, if applicable, the apportionment of membership in the Monroe County Board of Supervisors fails to meet the constitutional requirements defined by the United States Supreme Court, and I may say no party to this action has seriously argued otherwise.
In a supplemental brief the Attorney-Ueneral wrote: “ After careful study of the available case law upon the subject; upon due consideration of the relative benefits and evils which can result both from a failure to apply that proposition of law and also from its application; after attempting to weigh the relative good and relative evil, both from the standpoint of the present condition of apportionment in the several cities and counties within the State and from the probable future condition, should the present growth rate and fluctuating population patterns continue at the present or a faster pace (and we are assured by experts in the field of future planning that the change will continue at a constantly increasing rate into and through the foreseeable future); the position necessarily now taken by the *783 State respondents is that the equal protection clause does and must apply to local legislative bodies within this State and that the trials, inconvenience and evil of upheaval due to the application of the proposition are less to be feared, if met with intelligence, cooperation and good will, than the evil of a constantly increasing and more acute imbalance of representation of citizens in their local legislative bodies due to the failure to apply the proposition.”
In its brief the defendant City of Rochester said: “ Respondent city council does not press the position that the rule of Reynolds v. Sims, and subsequent apportionment cases, does not apply to the apportionment of boards of supervisors.” The brief of the defendant Board of Supervisors took no position with respect to the constitutionality of the present apportionment and was devoted principally to a discussion of the remedy to be afforded in the event of a finding of unconstitutionality.
The Association of Towns of the State of New York was permitted to submit a brief amicus curios. It likewise took no position as to whether the ‘ ‘ one person, one vote ’ ’ principle was applicable to apportionment of the Monroe County Board of Supervisors and stated: ‘ ‘ Until one of the local government rcapportionment cases reaches the New York Court of Appeals or the United States Supreme Court, there will continue to be doubt as to whether the principle must, in fact, be applied to local legislative administrative units such as the County Board of Supervisors. For present purposes, however, we assume that the doctrine of Reynolds v. Sims is applicable.” The brief was then devoted entirely to urging that this court stay action ‘ ‘ until the method and procedure of reapportioning County Boards have been settled by the political "organs of government ”. By their answers the defendant Town Board of Irondequoit admitted the allegations of the petition and joined in the demand for relief and defendant Town Board of Greece asked “ that this Court direct the reapportionment of the Board of Supervisors of the County of Monroe in compliance with existing court directives and decisions ”.
Since the decision of Reynolds v. Sims (377 U. S. 533, supra) several courts have held that the “ one person, one vote ” principle is applicable to the apportionment of elected members of legislative bodies of governmental units below the level of State Legislatures. (State ex rel. Sonneborn v. Sylvester, 132 N. W. 2d 249 [Wis.], (County Boards of Supervisors); Ellis v. Mayor and City Council of City of Baltimore, 234 F. Supp. 945 (City Council); Bianchi v. Griffing, 238 F. Supp. 997 (Board of Supervisors Suffolk County, N. Y.); Brouwer v. Bronkema, Case No. *784 1885, 'Circuit Court, Kent County, Mich., Sept. 11, 1964 (County Board of Supervisors).
Without presuming to add to the wealth of well-considered judicial writing contained in the foregoing decisions, I may say I am in general agreement with their reasoning and conclusions. I conclude that the “ one person, one vote” principle applies to the election of members of the Monroe County Board of Supervisors and that the present apportionment both with respect to the Town Supervisors and the districting of the city wards violates the equal protection provision of the Fourteenth Amendment of the United States Constitution.
I am aware of the case of Brairton v. Gillette (40 Misc 2d 1009, affd. 23 A D 2d 537) dismissing the complaint in an action to declare the local law establishing the present ward boundaries of the City of Rochester invalid. The decision at Special Term was made prior to the decision of Reynolds v. Sims and notes that the question of equality of population was not urged upon the argument. An examination of the record and briefs on the appeal to the Appellate Division, argued after Reynolds v. Sims, reveals that the plaintiffs there urged that the districting violated the equal protection provision of the Fourteenth Amendment. The complaint in Brairton did not challenge the composition of the Board of Supervisors as a whole and the defendants argued that necessary parties to make a proper determination with respect to the constitutionality of the districting were lacking. The affirmance by the Appellate Division Avas without opinion and I am unable to tell whether that court reached the constitutionality question or declined to consider it because of procedural shortcomings in the proceeding.
Although not alluded to by the parties, provisions of the Constitution of this State seem to require the same result. Section 11 of article I of the State Constitution provides: “ No person shall be denied the equal protection of the laws of this ■state or any subdivision thereof ”. .'Section 1 of article I provides: “No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers ”. The franchise of which one may not be deprived includes ‘ ‘ the right of citizens who possess the constitutional qualifications to vote for public officers at general and special elections”. (Matter of Burke v. Terry, 203 N. Y. 293, 295.) ‘ ‘ The right of suffrage can be denied by a debasement or dilution of the weight of a citizen’s vote just as effectively as by wholly prohibiting the free exercise of the franchise ” (Reynolds v. Sims, supra, p. 555). I therefore conclude that the present *785 scheme of apportionment of members of the Monroe County Board of Supervisors is also violative of sections 1 and 11 of article I of the New York State Constitution.
I am asked to declare section 150 of the County Law unconstitutional.
It is readily apparent that when enacting the laws resulting in the present composition of the Board of Supervisors (Town Law, § 20; Rochester City Charter; County Law, § 150) the Legislature was oblivious of any “ one person, one vote ” concept. When the present City Charter then providing 22 wards was adopted in 1907 (L. 1907, ch. 75'5), based on a State census of 1905 the county had a population of 239,000 of which 181,000 were in the City of Rochester. Thus, the 19 towns, the largest having a population of 6,200 and the smallest 1,400, had 19 supervisors representing 58,000 people while the city had 22 to represent 181,000 (1907 Rochester Directory). When the charter was amended in 1918 (L. 1918, ch. 547) to provide for two additional wards, based on the 1915 State census the county had a population of 319,000 of which 248,000 were in the city. The smallest town then had a population of 1,500 and the largest 10,000. Thus, 24 supervisors represented the 248,000 people in the city while 19 represented the 71,000 in the towns (1918 Rochester Directory). By the time of the 1960 Federal census, population changes had resulted in the populations of the city and the area in the county outside of the city being substantially proportionate to the numbers of supervisors allocated to each. At that time, the county had a total citizen population of 586,300 of which 318,600 resided in the city and 267,700 in the towns. A special Federal census of Monroe County conducted in 1964 disclosed the total population of the county to be 625,000 of which the city had 305,700. Thus, considering the city as one entity and the towns together as another (a concept of doubtful validity in the light of the present and prospective development of the Rochester-Monroe County metropolitan area) and assuming the city divided into 24 wards of equal population and the area outside of the city divided into 19 such districts, each city supervisor would represent 12,700 people and each supervisor in the area outside of the city 16,800 people.
While I do not now undertake to decide whether the present charter provision allocating 24 supervisors to the City of Rochester violates the constitutional requirements herein considered, it is apparent that, if the present population trend continues, it soon will. Section 20 of the Town Law providing that each town have a Supervisor, standing alone, has no constitutional vice since the Town Supervisor is its chief executive *786 officer in addition to serving as a member of the Board of Supervisors. The Supervisors of the city wards, on the other hand, perform no function other than as members of the Board of. Supervisors. It is urged by the Attorney-General that since, by the provisions of the Municipal Home Rule Law, counties have the power to reapportion their boards, section 150 of the County Law is not unconstitutional. The fact remains, however, that Monroe County has not so acted and the present apportionment of its Supervisors is required by section 150 of the County Law. I do not find it necessary, however, to declare section 150 of the County Law completely unconstitutional since there may be counties in which its application does not result in an unconstitutionally apportioned board of supervisors. I do hold it unconstitutional, however, insofar as its application requires the present apportionment of the Monroe County Board of Supervisors.
There remains for consideration the relief to be afforded plaintiffs.
‘ ‘ A denial of constitutionally protected rights demands judicial protection; our oath and our office require no less of us ” (Reynolds v. Sims, supra, p. 566). The concept that “ Apportionment is a duty placed by the Constitution on the Legislature, over which the courts have no jurisdiction” (Matter of Burns v. Flynn, 268 N. Y. 601, 603) has been dissipated by the more recent decisions of the United States Supreme Court. “ Remedial technique in this new and developing area of the law will probably often differ with the circumstances of the challenged apportionment and a variety of local conditions. * * * As stated by Mr. Justice Douglas, concurring in Balter v. Carr, ‘ any relief accorded can be fashioned in the light of well-known principles of equity’” (Reynolds v. Sims, p. 585). In the exercise of its general equity powers (State Constitution, art. VI, § 1) this court has the power and duty to implement its finding that the Board of Supervisors is unconstitutionally apportioned.
‘ ‘ Legislative reapportionment is primarily a matter for legislative consideration and determination, and * * * judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so ” (Reynolds v. Sims, p. 586). The present declaration of unconstitutional apportionment creates grave doubt as to the validity of any future election of members of the Board of Supervisors while so apportioned. In implementing its declaration, this court must balance the present constitutional right of the plaintiffs to an undiluted vote with its obligation to avoid undue *787 disruption of the board’s orderly conduct of the county’s business and its desire to afford the defendants a reasonable opportunity to fashion an acceptable scheme of apportionment.
This court has no inclination or intention to summarily devise and impose a plan for constitutional apportionment at this time. The two-year terms of the present Supervisors expire at the end of this year and elections must be held at the general election in November, 1965. In view of the referendum requirements of the State Constitution and statutes, it is highly unlikely that a constitutionally acceptable scheme of apportionment can be effected prior to that election. In that connection it may be noted that in undertaking to apportion itself under court direction, a legislative body of this State may not disregard requirements of the State Constitution and statutes not inconsistent with the requirements of the United States Constitution (Matter of Orans, 45 Misc 2d 616 [Matthew M. Levy, J.], from which an appeal to the Court of Appeals has been argued and is awaiting decision). I am aware that the State Legislature and Executive Department are considering measures to facilitate the reapportionment of local legislative bodies. I am also aware that efforts by the Board of Supervisors to change the voting powers or numbers of its members have been rejected at referenda conducted during the past two years. Of course, neither a legislative body, be it local, State or Federal, or a majority of the people may deprive an individual of a right guaranteed by the United States Constitution. (Lucas v. Colorado Gen. Assembly, 377 U. S. 713, 736.)
The plaintiffs and defendant Board of Supervisors have questioned the constitutional validity of the split referendum provisions of the Municipal Home Buie Law. Obviously they permit a majority of a minority of the people of the county to thwart any effort by the Board of Supervisors to reapportion itself. Had the county possessed similarly restricted home rule powers in 1907 and assuming that the entire population were qualified voters, less than 30,000 of the county’s 239,000 voters could have prevented correction of the, by presently defined constitutional standards, grossly disproportionate representation on the Board of Supervisors. While I do not find it necessary to pursue this aspect further at this time, should efforts by the county to comply with the constitutional requirements of representation continue to be rejected by the voters, closer scrutiny of the validity of the split referendum provisions, at least as applied to reapportionment by the Monroe County Board of Supervisors, must be had.
*788 While, as in Bianchi v. Griffing (supra) this court might take no action at this time and retain jurisdiction pending action by the Legislature or the Board of ¡Supervisors, to me it seems advisable that a judgment be entered declaring the present apportionment unconstitutional so that, if desired, the parties may seek a prompt review of the determination by appellate courts.
An order may be entered (1) dropping as a party Louis J. Lefkowitz, as Attorney-General of the State of New York; (2) adding the 'State of New York as a defendant; (3) denying a motion to drop as defendants Nelson A. Rockefeller, as Governor of the 'State of New York, and the Legislature of the State of New York; (4) amending the complaint to allege: “ That petitioners sue herein for themselves and all others similarly situated”; (5) denying the motion of the defendant Common Council of the City of Rochester to dismiss the complaint.
A judgment may be entered (1) declaring that the present apportionment of members of the Monroe County Board of Supervisors violates the equal protection provision of the Fourteenth Amendment of the United States Constitution and sections 1 and 11 of article I of the New York State Constitution; (2) declaring that section 150 of the County Law, insofar as its application requires the present apportionment of the Monroe County Board of Supervisors, violates the said constitutional provisions; (3) providing that the present Board of Supervisors shall continue to function as presently constituted; (4) providing that unless a constitutionally acceptable method of apportionment becomes effective prior thereto, the Supervisors to be chosen at the 1965 election be chosen in accordance with presently existing provisions of law; (5) providing that unless in the meantime the court otherwise directs, the terms of the Supervisors to be chosen at the 1965 election will expire December 31, 1966; (6) providing that this court retains jurisdiction of this case and will entertain an application by any of the parties for further relief after April 1, 1966 in the light of then existing legislative and decisional law and the interim efforts of the defendants to comply with the constitutional mandate.
I do not deem it appropriate at this time to make any suggestion as to the methods or procedures to be followed or the factors to be considered in arriving at a constitutional apportionment.
Upon the argument the defendant City of Rochester was unwilling to concede that plaintiffs are citizens and voters of the Town of Irondequoit and answers of some of the defendant towns have denied that allegation of the complaint. Unless *789 the parties are now willing to make such a concession, that issue will be resolved at a hearing to bo held upon settlement of the judgment and order.
The judgment and order are to be settled upon notice .to all parties. Failure to appear at the settlement or, at that time, to question the status of plaintiffs will be deemed a concession that plaintiffs are citizens and voters of the Town of Irondequoit.*

 On May 3, 1965 the fifth decretal paragraph was amended to read as follows: “ Ordered, Adjudged and Decreed, that unless in the meantime, this Court directs otherwise, the terms of the Supervisors of the several wards of the City of Rochester to be chosen at the 1965 election will expire December 31, ,1966 and the terms of the Supervisors of the several Towns of the County of Monroe chosen at the 1965 election will expire December 31, 1966 as respects their membership on the Board of Supervisors only, their terms as officers of their respective Towns continuing to the expiration thereof as provided by Article 3 of the Town Law.”