**John LODICO, Sr., Plaintiff,**

v.

**BOARD OF SUPERVISORS OF the COUNTY OF ROCKLAND,**
Defendant,
and
**Town of Clarkstown, Intervenor.**
No. 65–Civ. 2361.

United States District Court
S. D. New York.
May 20, 1966.

See also, D.C., 256 F.Supp. 440.

Roland, Hurley & Fox, Stony Point, N. Y., for plaintiff; Frederick P. Roland, Stony Point, N. Y., of counsel.

J. Martin Cornell, County Atty., for defendant.

Donald S. Tracy, Town Atty., for intervenor.

Louis J. Lefkowitz, Atty. Gen. of State of New York, Daniel M. Cohen, Asst. Atty. Gen.

MEMORANDUM OPINION

CROAKE, District Judge.

Plaintiff, a resident of the Town of Clarkstown, County of Rockland, State of New York, brought this action in the New York State Supreme Court in and for his county, seeking a declaratory judgment

"that Article 4 of the County Law [McKinney's Consol.Laws, c. 11] of the State of New York * * * [is] illegal, invalid, void and unconstitutional"[1] and

"that the defendant immediately reconstitute and formulate a plan wherein and whereby the vote of the BOARD OF SUPERVISORS be proportionate

---

[1] Plaintiff has since specifically stated what is, of course, the thrust of his action, that is, not a questioning of "the constitutionality of Section 150 of the County Law of the State of New York *per se* but [rather a questioning of] * * * the constitutionality of the structure of the County Board of Super-visors and its functioning under Article 4 of the County Law of the State of New York." See the undated affidavit of Frederick P. Roland, Esq., counsel for the plaintiff, submitted after the original hearing on this matter under covering letter of November 16, 1965.

to the number of persons each member represents in relation to the Township and the County population respectively."

After removal by the defendant, the plaintiff moved for summary judgment and the defendant sought to:

> (1) add parties claimed to be indispensable, the State of New York, and the other towns in the county, contending that the county cannot reapportion without enabling legislation of the state and that any order of the court will directly affect the five towns in the county, and (2) refer "the motion to be heard and determined by a district court of three judges on the ground that the constitutional questions are such that the appeal from any order should be directly to the U. S. Supreme Court."

The intervenor supported the application of the defendant. The motions came on to be heard before the undersigned in the motion part of this court on November 16, 1965, and after some consideration, in a memorandum filed January 17, 1966, the request to convene a panel was granted and the remaining applications were denied without prejudice to renewal before the panel. In an order filed simultaneously with the memorandum, the Hon. J. Edward Lumbard, Chief Judge of the Court of Appeals for this Circuit designated that the Hon. Leonard P. Moore, United States Circuit Judge, and the Hon. Dudley B. Bonsal, United States District Judge for the Southern District of New York, sit with the undersigned in the statutory court. Argument was heard by the panel on February 16, 1966, and in a per curiam opinion filed simultaneously herewith, the matter was resubmitted to me.

It is the practice of the undersigned to confine opinions to only those matters upon which comment must of necessity be made. However, in the instant circumstances, in the light of the importance of the approach manifested by the statutory court, and in view of the full and hearty agreement of this court with that approach, the temptation to speak shall not be resisted.

In the Suffolk County Reapportionment case, Bianchi v. Griffing, 238 F. Supp. 997 (E.D.N.Y.1965), app. dismissed, 382 U.S. 15, 86 S.Ct. 52, 15 L.Ed. 2d 11 (1965), the court retained

> "jurisdiction of the action with leave to the plaintiffs, in the event an appropriate governing body has not been created for Suffolk County within the permitted standards for representation, to apply for further relief. At this time, it cannot be said that the legislature is unaware of the problem nor, in the light of current court pronouncements, can it now be said that it has failed to act." 238 F.Supp. 1005.

Though noting that,

> "Many cases have been pending in the Supreme Court and in other courts arising out of the decision in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) but despite the plethora of cases filed and the Supreme Court decisions of June 1964, there has been found no Supreme Court case which overturns the principle announced by that Court that section 2281 does not apply where 'although the constitutionality of a statute is challenged, the defendants are local officers and the suit involves matters of interest only to the particular municipality or district involved.' Ex parte Collins, 277 U.S. 565, 568, 48 S.Ct. 585, 586, 72 L.Ed. 990 (1928).

the court manifestly held appropriate the convening of a three-judge court.

The "one-man-one-vote" principle was held applicable to the legislative bodies at a lesser than state level. It was stated that:

> "Although no state officer is named as a defendant in this suit and even though we were completely satisfied (which we are not) that no activity of the Board of Supervisors touches upon state interests, it would be unrealistic to ignore the similarity which exists between the selection of state and county legislative bodies. In county-wide administration, just as in statewide administration, the inhabitants of the populous areas should not be

governed by representatives drawn from other and thinly populated areas." 238 F.Supp. at 1004.[2]

The court spoke at length upon the inappropriateness of intervention by it at that juncture. See 238 F.Supp. 1004–1005. An appeal on behalf of the Board of Supervisors was taken. Plaintiffs appellees moved to dismiss and that motion was granted and "the appeal * * * dismissed for want of jurisdiction." 382 U.S. 15, 86 S.Ct. 52 (per curiam).[3]

Suffolk County may be compared with Rockland[4] as follows:[5]

| Name & Population of Smallest & of Largest Cities, Towns, or Wards Represented | | Ratio of Largest to Smallest | Least No. Who Elect Maj. of Board of Supervisors | | Total Popula- tion | % of Total Population Electing a Majority of Board |
|---|---|---|---|---|---|---|
| **SUFFOLK** | | | | | | |
| Shelter Island | 1,312 | 131.8 | 6/10 | 115,161 | 666,784 | 17 |
| Islip | 172,959 | | | | | |
| **ROCKLAND** | | | | | | |
| Stony Point | 8,739 | | | | | |
| Orangetown | 42,172 | 4.9 | 3/5 | 58,567 | 136,803 | 43 |

2. See also the subsequent case of Blaikie v. Wagner, 258 F.Supp. 364, S.D.N.Y., October 14, 1965, the New York City Council case, wherein the court stated that:
"The questions of justiciability and the applicability of the so-called 'one-man-one-vote' principle to legislative bodies at a lesser than State level were carefully considered in Bianchi v. Griffing, 238 F.Supp. 997 (D.C.1965), appeal dismissed, 382 U.S. 15, 86 S.Ct. 52, 15 L.Ed.2d 11 (1965). Although there were decisions of the Supreme Court which would have supported a contrary result and although persuasive arguments can be made to the effect that government at such levels should be by the people and not by the judiciary, the decisions of various courts, State and Federal, so overwhelmingly point to the principle's application at County and City levels that in Bianchi this particular Rubicon was crossed. Furthermore, logic, for whatever merit it may have in this situation, is persuasive against a re-crossing. Concededly, the City Council is the legislative body enacting laws affecting the lives of over eight million people—a population far greater than that of many States." pp. 4–5.

3. The jurisdictional statement and the motion to dismiss have been examined but there does not appear to be guidance found in the fact of dismissal of the appeal.

4. Attached to the instant complaint and incorporated and referred to therein, is a schedule of population figures for the various towns in Rockland County for the years 1950, 1957 and 1960. That schedule, and the figures from a special 1963 census, see 1965–66 New York Legislative Manual, p. 1060, are as follows:

| TOWNS | U. S. CENSUS April 1950 | SPECIAL U. S. CENSUS April 1957 | U. S. CENSUS April 1960 | SPECIAL U. S. CENSUS 1963 |
|---|---|---|---|---|
| Clarkstown | 15,674 | 24,280 | 33,196 | 42,749 |
| Haverstraw | 12,979 | 15,070 | 16,632 | 17,538 |
| Orangetown | 34,554 | 39,034 | 43,172 | 47,051 |
| Ramapo | 20,584 | 27,264 | 35,064 | 44,375 |
| Stony Point | 5,485 | 8,132 | 8,739 | 10,316 |

5. These figures are taken from a table of Representation on Boards of Supervisors in New York State in the appendix to an article by Professor Jack B. Weinstein, entitled "The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government." 65 Col.L.Rev. 21, 51–54 (Jan. 1965).

For all counties in the state, the average ratio of largest represented town, etc., to smallest, is 32.3. The lowest figure is 3.2, for the County of Putnam. The highest ratio is 203.8, in the County of St. Lawrence. The Suffolk figure is the second highest, and the Rockland ratio, the fourth lowest.[6] There are only seven other counties with a ratio of less than 10:1.

The average percentage of the total population electing a majority of a board of supervisors is 27. The highest figure is that in Putnam County, 50, and the lowest, 17, in the counties of Franklin, Herkimer and Suffolk. The Rockland figure of 43 is the third highest in the state. There are no other counties for which the percentage is higher than 40 and only eight others in which the percentage is 35 or above.

As stated at the hearing before the panel, the defendant does not question the existence of a disparity warranting correction. Rather, argument is directed toward the propriety of intervention by the court at this time, support is asserted for the one-man-one-vote principle, and stress placed upon the affirmative action thus far taken in an effort to remedy the malapportionment.

As to the matter of affirmative action, it is urged that there is an absence of legal authority by which the county may reapportion itself, that on December 1, 1964, a Charter Study Commission was created for the purpose of considering the formation of a County Charter, that on July 20, 1965, the Board of Supervisors adopted Res. No. 402, providing for the creation of a reapportionment commission, which Commission is presently studying the matter. It is stated the latter Commission had been created in anticipation of enactment of legislation passed by the State Legislature just prior to the close of the session in July which would have given counties such as Rockland the authority to reapportion themselves pursuant to home rule. However, the measure was vetoed by the Governor. It is asserted that the Commission has continued to act so that upon the passage of new legislation, the Board may be better prepared to act. Robert P. Slocum, elected Supervisor of the Town of Stony Point and Chairman of the Board, in a telegram to the Counsel to the Governor dated July 13, 1965, "urgently request[ed] the Governor to give serious consideration to approving legislation passed recently by the State Legislature setting guidelines for counties without charters to reapportion and establish county legislatures by 1967." On September 7, 1965, the Board passed Resolution No. 456, requesting the Governor "to call an immediate special session of the New York State Legislature * * * for the purpose of passing legislation which will allow the Counties of the State of New York to implement the one-man, one-vote decision of the United States Supreme Court."

In an affidavit dated February 4, 1966, Frank Strauss, Executive Assistant to the Chairman of the County Board of Supervisors and Chairman of the Reapportionment Commission of the County, states that:

"The commission has been meeting regularly since its creation in July of 1965, and at the present time the commission has been considering three possible plans for reapportionment of the County of Rockland. At the last regular meeting, held on January 26th, 1966, the commission considered a draft of a proposed plan, a copy of which is attached. * * * This plan was discussed in detail at the meeting and certain revisions were made which are in the process of being incorporated in a revised plan. * * * It is anticipated that the Reapportionment Commission will submit at least three proposed plans to the Board of Supervisors of the County of Rockland for their consideration within the next thirty to sixty days. It is anticipated that the Board of Supervisors will select one of the plans to be placed in

6. The Rockland figure would be the fifth lowest if the City Council of the City of New York, with a ratio of 3.2, were counted.

final form for the purpose of reapportioning the County of Rockland.

" * * * I am hopeful that legislation will be passed by the New York State Legislature empowering and enabling counties within the State of New York to reapportion. I have been advised that a bill has been introduced in the New York State Legislature for this purpose at the present time.[7] I am mindful of the fact that the only method by which a county in the State of New York can reapportion at the present time is by the adoption of a charter, subject to a mandatory referendum pursuant to the provisions of the Municipal Home Rule Law of the State of New York. The Charter Commission of the County of Rockland has been meeting once a week and is in the process of preparing a charter. It is anticipated that the charter will be prepared for final approval by the Board of Supervisors prior to the general elections in the fall of 1966. The Board of Supervisors is considering submitting the proposed charter to the voters at the election in the fall of 1966." pp. 2–3.

Again, as to the enabling legislation, if that is passed by the legislature, "a reapportionment plan will be approved and be ready for adoption by the County." p. 4.[8]

In view of Bianchi, supra, of the contrast between Suffolk and Rockland Counties and the relative situation in the various counties in this State and of the attempts to remedy the instant disparity, there is indeed immense doubt as to the existence of a basis upon which this court could validly predicate intervention, additional to the time schedule hereinafter provided.[9] Moreover, the determination by the panel to expand the principle of Bailey v. Patterson, 369 U.S.

---

7. See also pp. 62–63 of the Minutes.

8. In a letter dated April 18, 1966, counsel for the defendant notes various developments relating to reapportionment in the county, stating that:

"The Reapportionment Commission has been meeting on a regular basis and has devised two plans of reapportionment with some variations for each plan. These plans will undoubtedly be forwarded to the Board of Supervisors after the close of the New York State Legislative Session in Albany. There are numerous bills which have been introduced in the New York State Legislature to permit counties in the State of New York to reapportion. These bills have different requirements as to the method of reapportionment, and the Reapportionment Commission's report will of necessity have to evaluate and consider any legislation that is ultimately passed. In this connection, the Board of Supervisors has directed this office to prepare proposed legislation to be introduced in the State Legislature as a Home Rule Bill to permit the Board of Supervisors to reapportion. The purpose of this Home Rule request is to insure that the County of Rockland will be able to reapportion if, by chance, the State Legislature does not pass a general bill permitting such reapportionment. This office has prepared such proposed 'insurance' legislation and I am enclosing a copy for your reference.

This proposed bill was presented to the Board of Supervisors at their meeting on April 5th, and it is anticipated that action will be taken by the Board of Supervisors at their regular meeting on April 19th."

9. See also the recent Westchester County case, Town of Greenburgh v. Board of Supervisors, 49 Misc.2d 116, 266 N.Y.S. 2d 998, January 6, 1966, wherein Justice Gerald Nolan stated that:

"It must be conceded that a denial of constitutional rights demands judicial protection. However, legislative apportionment is primarily a matter for legislative consideration and determination, and judicial relief becomes appropriate only when a legislative body fails to reapportion according to constitutional requisites in a timely fashion after having had an adequate opportunity to do so (Cf. Reynolds v. Sims, supra, 377 U.S. 533, 586, 84 S.Ct. 1362 [12 L.Ed.2d 506]). * * * Legislators charged with the duty of reapportioning voting power in local legislative bodies, according to recently announced constitutional standards, are required to act in a new and developing area of the law in which the rules which are to be applied are by no means well defined. The Board has before it for consideration at least two tentative local laws which are designed to provide for valid population based representation, and it is quite possible that the legislature of

31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), "as a matter of practical judicial administration and as one which does not contravene the purposes of the three-judge court statute in this context"[10] is well warranted. The potential volume of these cases is large. The stage at which we are presently is one not calling for action apart from that taken herein. There appears no useful purpose in withdrawing two additional judges from other cases, wherein litigants also have significant controversies which are however presented at a juncture where further action is warranted, merely to set a time schedule. This is especially to be considered in a metropolitan area, such as this one, where, it might be noted, the tasks of the trial bench are not insubstantial.

As stated by the District Court for the District of Minnesota, in Hedlund v. Hanson, 213 F.Supp. 172 (1962),[11] wherein the apportionment of Hennepin County Minnesota County Commissioner Districts, was questioned:

"The federal courts are disinclined to rule on matters peculiarly and primarily of state concern. A healthy respect for the division of powers between the central government and the states is conducive to harmonious and effective government on all levels. We must have a 'scrupulous regard for the rightful independence of the state governments,' and should refrain from acting where proper recourse may be had to a branch or tribunal of the

state government." (citations omitted) 213 F.Supp. at 173.

The court held that:

"Since the claimed malapportionment is not disputed, and in view of the intention of the defendants and the intervenor to seek pertinent new laws of the State Legislature which convenes in January of 1962, and of the stated intention of the Hennepin County Board to redistrict the County before the next regular election in 1964, and in the light of the ready availability and jurisdiction of the Minnesota State Courts to afford needful judicial services in the matter, we think it would be unwise and inappropriate for us to accept and exercise jurisdiction in the matter at this time.

"We conclude, therefore, that the case should be continued without date, and the plaintiffs will be permitted, if so advised on the basis of subsequent events, to reassert their claim in this Court." 213 F.Supp. at 173–174.

Furthermore, the potent radiations in these passages pointing toward the issue of whether a matter involving less than state-wide reapportionment is appropriately presented in federal courts in a factual situation where malapportionment is not disputed, where there is present an intention and action to remedy the malapportionment, and a state court system most readily available to grant appropriate relief, may not properly be ignored.

---

the State will devise means to facilitate reapportionment of local legislative bodies at its 1966 session. Under all the circumstances, it is considered advisable to defer further judicial action for the present at least so that the Board, and the State Legislature, may have an opportunity to take such action as may be necessary to provide constitutional reapportionment or districting. * * * It is not for the court, at least in the first instance, to prescribe the type of representative government which is best suited for the needs of Westchester County. That is a legislative problem. The function of the courts, ordinarily, is to determine whether par-

ticular legislative enactments transgress constitutional requirements. Whether further judicial action will be required in this case may be better determined after the legislative authorities have had an adequate opportunity to act." 266 N.Y.S.2d pp. 1004–1005.

10. As to that purpose, see, for example, the recent case of Swift & Company, Inc. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

11. Though manifestly prior to the June 15, 1964 Supreme Court decisions, there was apparently no question raised about the applicability of the reapportionment decisions to the County level of Government.

As already noted, this is a removed action. Upon oral argument before the panel, counsel for the plaintiff, the party for whose protection the federal courts would presumably be in this area, stated that it would be his preference if the matter had remained in the state court. (See Minutes pp. 5, 16.)[12] The decision of the District Court in *Bianchi,* supra, was rendered on February 1, 1965. It does not appear that prior to that determination, the New York State Courts had held the one-man-one-vote principle applicable to local governmental bodies.[13]

In Goldstein v. Rockefeller, 45 Misc. 2d 778, 257 N.Y.S.2d 994 (Sup.Ct. Monroe Co., April 6, 1965),[14] the court concluded that the one-man-one-vote principle applied to election of members of the Board of Supervisors of Monroe County and that the apportionment of members of the Board, and Section 150 of the County Law, in so far as its application required that apportionment, violated the equal protection clause of the Fourteenth Amendment and Sections 1 and 11 of Article I of the New York State Constitution. The court permitted the Board to continue to function as then constituted, the November elections to

be held under existing law and retained jurisdiction, providing that the parties might apply for further relief after April 1, 1966, "in the light of then existing legislative and decisional law and the interim efforts of the defendants to comply with the constitutional mandate." 257 N.Y.S.2d at 1006.

In Seaman v. Fedourich, 45 Misc.2d 940, 258 N.Y.S.2d 152 (Sup.Ct. Broome Co. April 13, 1965), the court held that:

"That the 'one person, one vote' principle is applicable to the apportionment of elected members of legislative bodies of governmental units below the level of state legislatures can no longer be doubted." (citations omitted) 258 N.Y.S.2d at 155.

The court has previously noted the Monroe County case and stated that:

"We may not question the decisions of the United States Supreme Court. We are in accord with the decision in Goldstein et al. v. Nelson A. Rockefeller, et al." 258 N.Y.S.2d at 154.

The court held unconstitutional the then apportionment of the Common Council of the City of Binghamton under Federal and State Constitutions, enjoined any

12. See also p. 25 of the minutes, wherein counsel for the defendant in response to the following question from the panel:
   "Isn't the Supreme Court of Rockland County in a better position to determine these matters than this court?" stated that, "I am sure they could do a competent job."

13. No intimation of what may have been deemed relevant to that prior decision is intended. Rather, the thrust of the comment is merely toward pointing out the subsequent unequivocal demonstration of availability of relief in the New York courts.

14. Worthy of mention is the position taken by the Attorney General, in a supplementary brief, that:
   "After careful study of the available case law upon the subject; upon due consideration of the relative benefits and evils which can result both from a failure to apply that proposition of law [the one-person-one-vote principle] and also from its application; after attempting to weigh the relative good and relative evil, both from the standpoint of

the present condition of apportionment in the several cities and counties within the State and from the probable future condition, should the present growth rate and fluctuating population patterns continue at the present or a faster pace (and we are assured by experts in the field of future planning that the change will continue at a constantly increasing rate into and through the foreseeable future) ; the position necessarily now taken by the State respondents is that the equal protection clause does and must apply to local legislative bodies within this State and that the trials, inconvenience and evil of upheaval due to the application of the proposition are less to be feared, if met with intelligence, cooperation and good will, than the evil of a constantly increasing and more acute imbalance of representation of citizens in their local legislative bodies due to the failure to apply the proposition." 257 N.Y.S.2d at 1000–1001.
See also the remarks of Assistant Attorney General Daniel M. Cohen, before the panel herein, which appear at p. 62–63 of the Minutes.

further elections under the existing apportionment plan; permitted the Council to continue to function as then constituted and retained jurisdiction to entertain an application by any party for review of any apportionment plan adopted. The Common Council subsequently formulated a plan, which was determined by the Court on May 3, 1965, not to meet constitutional requirements, 258 N.Y.S.2d 1008. This decision was unanimously affirmed by the Appellate Division for the Third Department on May 20, 1965, without opinion, 23 A.D.2d 968, 259 N.Y.S.2d 1021; and, also unanimously, by the Court of Appeals, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778 (July 9, 1965). In an opinion written by Judge Stanley H. Fuld, that court spoke as follows:

"There can be little doubt, and it is not disputed by the defendants, that that principle [one person, one vote] is applicable to elective legislative bodies exercising general governmental powers at the municipal level * * * and such has been the conclusion reached by several courts called upon to consider the question. [Citations and footnote omitted.]

"It is axiomatic that local governmental units are creations of, and exercise only those powers delegated to them by, the State (N.Y.Const., art. IX, §§ 1, 2; Municipal Home Rule Law, §§ 10, 11) and, certainly, if the latter may exercise its legislative powers only in a body constituted on a population basis, any general elective municipal organ to which it delegates certain of its powers must, by a parity of reasoning, be subjected to the same constitutional requirement. Viewed in another way, if, as seems evident, the thrust of the Supreme Court's decisions is that it is inherent within the concept of 'equal protection' that a person has a substantial right to be heard and to participate, through his elected representatives, in the business of government on an equal basis with all other individuals, no reason or justification exists for differentiating, so far as that right is concerned, between the general governmental business carried on in the highest legislative organs of the State and that conducted, by virtue of a delegation of authority, in municipal law-making bodies." 262 N.Y.S.2d at 449, 209 N.E.2d at 781.

In Shilbury v. Board of Supervisors, 46 Misc.2d 837, 260 N.Y.S.2d 931 (Sup. Ct. Sullivan Co. June 26, 1965), the court made similar determinations as to the Sullivan County Board of Supervisors, except that a plan of weighted voting[15] was ordered to be commenced on January 1, 1966 until such time as a constitutionally acceptable plan of apportionment was adopted and that, in any event, a valid plan must be adopted so as to be applicable to the 1967 general election.

In Augostini v. Lasky, 46 Misc.2d 1058, 262 N.Y.S.2d 594 (Sup.Ct. Broome Co., July 20, 1965); Treiber v. Lanigan, 48 Misc.2d 434, 264 N.Y.S. 2d 797 (Sup.Ct. Oneida Co. Nov. 30, 1965); Town of Greenburgh v. Board of Supervisors, supra note 7; Dona v. Board of Supervisors, 48 Misc.2d 876, 266 N.Y.S.2d 229 (Sup.Ct. St. Lawrence Co. 1966); and Graham v. Board of Supervisors, 49 Misc. 459, 267 N.Y.S.2d 383 (Sup.Ct. Erie Co., January 20, 1966), similar conclusions were reached as to the Boards of Supervisors of Broome, Oneida, Westchester, St. Lawrence and Erie Counties, respectively.

Though the court is not insensitive to the considerations which might have prompted removal, the case is properly here. However, the many decisions in the New York State Courts dispel any thought that they are unwilling or unable to cope with and to endeavor to solve the problem of disproportionate representation.

In the light of recent developments, the parties might have been well advised

---

15. The interim relief of weighted voting was subsequently adopted in the Binghamton Common Council case. 47 Misc. 2d 26, 262 N.Y.S.2d 591 (July 22, 1965).

to have continued to have sought relief in the State courts of their community where the particular needs of the voters of Rockland County would be better known to such courts and under whose supervision a plan could have been created.

Since the Board has made representations as of February 4, 1966, that three proposed plans would be prepared within 30 to 60 days[16]—a period well passed—one plan to be selected by the Board for submission to the voters by the Fall election of 1966 subject to the enactment of legislation at the current term of the Legislature enabling them so to do, this court at this time should refrain from trespassing into a field which fundamentally belongs to the voters of the county. Only when they evince a willful determination not to cure the disproportion in voting strength which now admittedly exists should the courts interfere.

Plaintiffs quite properly are concerned over possible dilatory tactics although the Board may well be justified in its position that it should await legislative action before proceeding to present a definite plan. Any difference in opinions between the parties as to the present power of the Board to reapportion itself need not be resolved now and may await further developments.

Plaintiffs, nevertheless, are entitled to a time schedule. Therefore, the court orders that the Board cause to be prepared a reapportionment plan for the election of a Board of Supervisors and/or the preparation of a charter embodying provisions for the election of a legislative body for the county on a reapportioned basis by such date as will enable such plan and/or charter to be submitted to the voters of Rockland County at the November election of 1966 and in the meantime this court retains jurisdiction of the action so that the parties may make further application for such relief as may be required in the premises.

So ordered.

---

16. See also Note 8, supra, p. 20, relating to the matter of a proposed Home Rule Bill.