Btjbke, J.
Rockland County is presently governed by a Board of Supervisors, consisting of the Supervisors of each of the county’s- five constituent towns. In early 1966, a Federal District Court, upon its finding that the board was malapportioned, ordered that a plan be devised which would satisfy the requirements of the Equal Protection Clause and that such plan be submitted to the voters of the county for their approval. (Lodico v. Board of Supervisors, 256 F. Supp. 442.) Pursuant to that order, three plans were devised and submitted to the voters but were rejected at the polls.
In September, 1968, the present action was brought to compel the board to reapportion in accordance with constitutional requirements. In response, the board submitted a weighted voting scheme as an interim measure but, upon the plaintiffs’ motion, that plan was rejected at Special Term. The board then devised and submitted the plan approved in the courts below, which is the subject of the present appeal.
The plan as adopted provides for a County Legislature composed, on the basis of the population of the county as of 1969, of 18 members chosen from 5 districts which correspond to the county’s 5 constituent towns. Each district is assigned its legislators according to the district’s population in relation to the population of the smallest district. The smallest district, Stony Point, has a population of 12,114 and is assigned one representative in the County Legislature. The number of representatives to be assigned to each of the other districts is determined by dividing the population of each by the population of the base district, Stony Point, the number of representatives being the whole number resulting from that computation, plus any major fraction. The result in tabular form is as follows:

District Population No. of Representatives

Stony Point ............ 12,114 1
Haverstraw ........ 23,676 2
Orangetown ............ 52,080 4
Clarkstown............. 57,883 5
Ramapo................ 73,051 6
Each representative is to be elected at large within the district so that each district other than Stony Point will be a multimember district. Since the population of none of the other dis *314 tricts is an exact multiple of the population of Stony Point, there is some variation among districts in terms of the population per legislator, with the result that Stony Point is 0.3% “ over-represented,” Haverstraw is 2.5% “ over-represented,” Orangetown is 7.1% “ under-represented,” Clarkstown is 4.8% “ over-represented,” and Ramapo is 0.2% ‘‘ under-represented. ’ ’ The plaintiffs attack the plan both on the ground that the board has made no attempt at achieving equality of representation in terms of population and on the ground that the utilization of multimember districts is inherently defective. In addition, the plaintiffs attacked the so-called “ two hats ” provision of the plan under which each Town Supervisor, by virtue of his election to that office, would also automatically become a member of the County Legislature.
Special Term approved the apportionment plan but modified the “ two hats ” provision so as to require that Town Supervisors, if they wish to hold seats in the County Legislature, must stand separately for election to that office. The Appellate Division, Second Department, affirmed that determination without opinion, with one Justice dissenting on the ground that the plan merely sought to achieve the best apportionment possible in terms of the maintenance of existing town lines. We, in turn, affirm the order of the Appellate Division.
I
It is, of course, true that the "one man-one vote ’ ’ principle enunciated in Reynolds v. Sims (377 U. S. 533) is applicable to local legislative bodies as well as to State Legislatures (Avery v. Midland County, 390 U. S. 474, 481). Under the principles set forth for the purpose of determining whether a particular plan of apportionment meets the requirements of the Equal Protection Clause, the question is whether the plan before us adequately apportions representatives on a population basis. However, the issue is not to be .resolved merely in terms of a - sterile mathematical exercise: “ [T]he Equal Protection Clause requires that a State make an honest and good faith effort to construct districts * * * as nearly of equal population as, is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each has an identical *315 number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement.” (Reynolds v. Sims, 377 U. S., at p. 577 [emphasis added].) Thus, the mere fact that there is a variation of 12% in the number of people per legislator under the present plan is not of itself sufficient to render the plan constitutionally defective (Roman v. Sincock, 377 U. S. 695, 711; Kirkpatrick v. Preisler, 394 U. S. 526, 530; Town of Greenburgh v. Board of Supervisors, 25 N Y 2d 817, 818). We must, therefore, in light of the particular circumstances of this case, determine whether the county has made a good faith effort to achieve equality of representation and whether there is sufficient justification for any variance from absolute equality. On this point, it should be recognized that the "one man-one vote ’ ’ cases have involved at least three levels of legislative reapportionment and that, in dealing with each of these levels, there are quite properly taken into account and weighed in the balance different considerations both as to the permissible variations from strict equality and as to the justification for variations from such strict equality. -The United States Supreme Court decisions indicate that, in regard to apportionment of congressional districts, the permissible variation from strict equality is indeed almost micrometric and the justification required for such deviation is correspondingly stringent (see Wesberry v. Sanders, 376 U. S. 1; Kirkpatrick v. Preisler, 394 U. S. 526; Wells v. Rockefeller, 394 U. S. 542). Decisions dealing with apportionment of State Legislatures tend to reflect a broader scope for permissible deviations and a more tolerant attitude toward the practical justification for deviations (see Fortson v. Dorsey, 379 U. S. 433, 437; Burns v. Richardson, 384 U. S. 73; Swann v. Adams, 385 U. S. 440). Similarly, and of -particular relevance on this appeal, the court has indicated a willingness to allow a still broader scope for permissible deviations from strict population equality and the justification for such deviations when dealing with local, intrastate legislative bodies (see Sailors v. Board of Educ., 387 U. S. 105; Dusch v. Davis, 387 U. S. 112; Blaikie v. Wagner, 258 F. Supp. 364).
In light of this apparent difference in treatment, it seems clear that we may find the population variance here to be within permissible limits (see Town of Greenburgh v. Board of Super *316 visors, 25 N Y 2d 817, supra) and the practical and historical justification for the variance to be sufficient. What the plan does is not to ignore population equality, but rather to achieve substantial equality within the context of a long-established town government framework, thus accommodating both constitutional and practical considerations. (See Jackman v. Bodine, 53 N. J. 585, cert. den. 396 U. S. 822.) It represents a balanced, bona fide application of the ‘ ‘ one man-one vote ” principle to the needs and circumstances of local government. As such, it comes within the ambit of the Supreme Court’s declaration “ that variations from a pure population standard might be justified by such state policy considerations as the integrity of political subdivisions, the maintenance of compactness and contiguity in legislative districts or the recognition of natural or historical boundary lines ” (Swann v. Adams, 385 U. S. 440, 444 [emphasis added]) and the declaration that the recognition of such factors in devising an apportionment scheme is permissible so long as they “ are free of any taint of arbitrariness or discrimination.” (Roman v. Sincock, 377 U. S. 695, 710, supra.) We, therefore, reject the contention that the plan before us is constitutionally defective .because of the minor population variance involved.
It is also contended that the plan’s incorporation of multimember districts necessarily indicates a constitutional defect. However, the contention flies in the face of the decision in Fortson v. Dorsey (379 U. S. 433) in which the court held that multimember districts, drawn substantially along existing county lines, are constitutionally permissible so long as the vote of each voter is “ ‘ approximately equal in weight to that of any other citizen in the State.’” (379 U. S., at p. 438). As with Fulton County, Georgia, in Fortson, the population of the Bamapo district in this case is approximately 6 times larger than that of Stony Point, a single-member constituency, and for that reason Bamapo elects 6 representatives. According to the reasoning of that opinion, such a multimember district device is permissible since each voter in Bamapo votes for 6 representatives to represent his interests in the County Legislature and, if the weight of the vote of any voter in Bamapo, when he votes for 6 representatives, is not the exact equivalent of that of a resident of a single-member district, we cannot say that his vote *317 is not approximately equal in weight to that .of any other citizen in the county (379 U. S., at pp. 437-438). That conclusion also adequately disposes of any claimed deficiency in such a plan based upon speculative mathematical analysis of such things as the “ effectiveness ” of actual representation. Indeed, as long as the basic population requirements of Reynolds v. Sims are met, and we hold that the Rockland County plan does meet those fundamental requirements, the use of multimember districts ‘ ‘ will constitute an invidious discrimination only if it can be shown that ‘ designedly or otherwise, a multimember constituency apportionment scheme, under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population.’” (Burns v. Richardson, 384 U. S. 73, 88, supra). No such showing has been made as to the plan under attack in this case. We, therefore, hold that the Rockland County apportionment plan is constitutional.
II
The plan as adopted also contained a so-called “two hats ” provision by which the person elected to the office of Town Supervisor of each of the five towns would automatically be entitled to a seat in the County Legislature. Special Term modified this provision of the plan so as to require that, if a Town Supervisor also wished to hold a seat as a County Legislator, he must be elected separately to the latter position. We affirm that determination. Town Supervisors are eligible to sit as members of County Legislatures by virtue of the recently amended section 10 of the Municipal Home Rule Law (L. 1969, ch. 834) which provides, in pertinent part, that “A plan of apportionment adopted by a county * * * may provide * * * supervisors of towns * * * shall be eligible to be elected as members .of the county legislative body.” (Emphasis added). The use of the term “elected” must be taken as indicating an intention on the part of the Legislature that a Town Supervisor could serve as a County Legislator only if he prevailed in an election for the office of County Legislator. Although it is true that we held in Matter of Brayman v. Stevens (20 N Y 2d 868) that section 411 of the County Law *318 prohibited a county officer from serving as a Town Supervisor, that decision antedated the enactment of section 10 (subd. 1, par. a, cl. [13], sub cl. [b]) of the Municipal Home Buie Law with which it is obviously inconsistent. Under familiar principles of statutory construction, the conflict between these provisions must be resolved by holding that the latter section impliedly repealed the former insofar as they are inconsistent, with the result that the latter is controlling. Special Term, therefore, properly determined that the plan should be modified to the extent indicated above.
Accordingly, the order of the Appellate Division, Second Department, should be affirmed.